## S. N. CANNELL v. R. A. SMITH.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 2 OF PHILADELPHIA COUNTY.

Argued April 7, 1891—Decided April 27, 1891.
[To be reported.]

1. When a real-estate broker, employed by the vendor to effect a sale, has acted in the transaction as the agent of the purchaser, without the vendor's knowledge, the latter may recover back from the broker a commission paid to him in ignorance of that fact, irrespective of the question whether the sale was an advantageous one or not.

2. The plaintiff having shown that the defendant had paid $2,600 to the purchaser, in settlement of a claim grounded upon the allegation that he was the purchaser's agent, an offer by the defendant to show that he did not believe and had never admitted that he was morally or legally liable to the purchaser, was irrelevant and inadmissible.

Before PAXSON, C. J., GREEN, CLARK, McCOLLUM and MITCHELL, JJ.

No. 209 January Term 1891, Sup. Ct.; court below, No. 806 September Term 1889, C. P. No. 2.

On December 26, 1889, Sarah N. Cannell brought trespass against Randolph A. Smith, filing a statement of claim to recover back the sum of $5,000 paid by the plaintiff to the defendant as a commission for effecting a sale of real estate, the plaintiff averring that the defendant induced the payment of said sum by the representation that he was acting as her agent alone in the transaction, whereas he was employed and acting as agent for the purchaser. The defendant pleaded not guilty.

Statement of Facts.

At the trial on October 9, 1890, the following facts were shown:

Frank H. Massey was employed by Miss Louisa Drexel, through Edward V. Morrell, to negotiate for the purchase of certain real estate belonging to Sarah N. Cannell, the plaintiff. It was arranged that Massey should employ a sub-agent, to open the negotiation by ascertaining whether the property could be bought, and upon what terms. Massey thereupon employed the defendant, without disclosing to him who the prospective purchaser was. Massey testified for the plaintiff that he told the defendant to go and find out certain things from the plaintiff, saying to him, "If you do not get anything out of the matter, I will give you the sum of $25 for your trouble; if the matter is consummated, I will pay you out of my commission;" and, according to the usage and understanding among brokers in the real-estate exchange, to which both the witness and the defendant belonged, that meant half of the commission. The defendant, testifying in his own behalf, denied that Massey at that time said anything about any further compensation than $25, and stated that he was employed by Massey for the specific purpose of ascertaining certain facts, and that Massey was very particular to say he wanted the witness to do nothing more in the matter.

The defendant interviewed the plaintiff, told her that he thought he had a purchaser for her property, and inquired whether she would sell, and on what terms. The plaintiff testified that she understood at that time that the defendant was agent for a person who wished to purchase the place. Ascertaining from the plaintiff that she was willing to sell the property, and would take $60,000 for the mansion and curtilage, and $250 per acre for the remainder of the land, the defendant so reported to Massey, who thereupon authorized the defendant to make an offer of $75,000 for the entire property. The defendant made such an offer to the plaintiff, but it was not accepted. The defendant testified that, at or about that time, Massey said to him, "Did you strike her for a commission?" and on receiving a reply in the negative, remarked "She ought to pay a commission." Massey, testifying for the plaintiff, denied having such a conversation. The defendant testified that he understood from the talk about getting a commission, that his relations with

Statement of Facts.

the party represented by Massey were at an end, and he was to look to the other side for his commission ; and that then he went to the plaintiff and offered to act for her. After some talk, in which the defendant told the plaintiff that he would act for her alone, an agreement was made for the payment to him, in lieu of a commission, of one half of what he could get for the property over and above $80,000. On cross-examination, the defendant testified that he did not tell the plaintiff that he was to receive $25 from Massey, or that Massey had agreed to take care of him in his commission. The plaintiff testified, on cross-examination : " Q. When you first saw Mr. Smith, you believed, from what he told you, that he had a purchaser, and he knew who the purchaser was. When you made the agreement with him for half over $80,000, what reason had you to disbelieve that fact, viz., that he had a purchaser, and that he was acting for the purchaser as well as for yourself, and that he knew who the purchaser was ? A. Because he told me he was not acting for the purchaser. He was acting for me. Q. Was that the only reason? A. That was the only reason. I understood he was not working for the other party, but had transferred his allegiance to me." After stating that she had submitted the matter of her proposed agreement with the defendant to her daughters and her son-in-law, and that they thought, if the defendant was working for her, it would be a very good thing, as an incentive to him, the plaintiff was asked : " Q. What was it they thought would be a good thing? A. If he worked for the other party and could only get about $80,000, whatever they would give—that if he could work them up beyond that, that it would be to my advantage as my agent."

The proposed sale was finally consummated at the prices originally named by the plaintiff, which netted her about $92,000. Massey testified that down until that time the defendant was supposed to be still acting as his sub-agent, but that from occurrences which took place on the day the contract of sale was signed, the witness inferred that the defendant had some arrangement with the plaintiff to act as her agent. The plaintiff testified that on the day of the sale she suspected that the defendant was not dealing fairly with her, but that he afterwards assured her that he had acted honorably toward her, and she settled with him by paying him $5,000 as his compensation.

Charge of Court below.

Subsequent to that payment, Miss Drexel, through her attorney, made a demand upon the defendant for the amount he had received from the plaintiff, upon the ground that he had been guilty of a breach of trust in acting for the plaintiff while employed to act under Massey. The defendant compromised with Miss Drexel by paying her $2,600 of the money he had received from the plaintiff. He testified that he did so because he was frightened into it; that "the name of Drexel and John G. Johnson overpowered" him, and he paid the money against his convictions: "Q. Did you ever at any time admit or believe that you were under any moral or legal liability to pay anything to the Drexels?" Objected to.

Objection sustained.

"Q. Did you ever admit to the Masseys, or to anybody, that you had not carried out in full the agreement that you had made with them, or that you were under any legal liability to pay the sum you did pay to Miss Drexel or Mrs. Morrell?" Objected to.

By the court: Objection sustained; exception.[2]

The defendant offered to prove by Amos Shallcross that the value of the plaintiff's property was from $10,000 to $15,000 less than the price she received for it; for the purpose of showing that no damage was done to her. Objected to.

By the court: Objection sustained; exception.[3]

The defendant also offered in evidence a certificate of the assessed valuation of the plaintiff's property. Objected to.

By the court: Objection sustained; exception.[3]

At the close of the testimony, the court, FELL, J., charged the jury as follows:

The law will not permit a man to act at the same time as agent for both buyer and seller. No man in such a position can act with the fidelity which he owes to each principal. He is open to the temptation to serve the one employer at the expense of another, as his individual interests may be changed.

An agent owes to his principal frankness, unswerving fidelity, and the fullest measure of good faith. He is not in a position to give these, if, at the same time, he represents interests adverse to his principal. That he should occupy such a position, representing both buyer and seller representing interests

Charge of Court below.

that are essentially adverse to each other, is forbidden by sound morality, and it is forbidden by law. An agent, it follows, cannot recover compensation for services rendered a principal, under a contract either express or implied, if, at the same time, he represented an adverse interest, unless both parties know that he was acting for both.

If Mr. Smith represented the purchaser at the same time that he represented Mrs. Cannell, he could not recover under his contract for services to her. [If she paid him for such services, under a statement that he represented her alone, not knowing that he represented anybody else, she can recover the money back. It is not of importance that he represented her interests to her advantage, and that she lost nothing by it. Such a contract as this is forbidden by law.] [4]

If, however, she knew at the time that he represented the other party, the contract having been executed, she is not in a position to recover the money back. If she knew that fact, he could not enforce his contract against her for a commission, but the contract having been executed and the money paid, she is not in a position to recover it back. The law will not enforce an illegal contract; but if it has been carried into execution, it will not allow a recovery of the money. It lets the parties, both before and after, stand just where they were.

I do not desire to detain you, at this late hour, by reviewing the testimony. [The plain question of fact for you is this: Did Mr. Smith, at the time he represented Mrs. Cannell as a seller, also represent the buyer without her knowledge? If he did, his contract for commissions could not have been enforced by him, and she can now recover back the money paid to him.] [5] If his relations with the buyer had entirely ended, and he represented no one but her, he was entitled to his commissions, and there can be no recovery here. If she knew, at the time she entered into the contract with him and the services were rendered, that he was then representing the buyer, she cannot recover back.

—The jury returned a verdict for the plaintiff for $5,350. A rule for a new trial having been discharged and judgment entered, the defendant took this appeal, specifying that the court erred:

1. In not directing a verdict for the defendant.

Arguments.

2. In sustaining the objection to defendant's offer.[2]

3. "In refusing to admit the testimony of Amos Shallcross, and the certificate of assessment, to show that the appellant's efforts had secured her a large price for the property."

4, 5. In charging as set forth in [ ] [4] [5]

*Mr. B. F. Hughes* (with him *Mr. Lincoln L. Eyre*), for the appellant:

The court should have directed the jury to find for the defendant. It is true no point was presented asking for such instruction, but even in the absence of such a point, this court may reverse a judgment where the plaintiff has not presented evidence to sustain his case: Hoffer v. Wightman, 5 W. 205.

1. It was incumbent on the plaintiff to prove that she had been induced to pay the money to the defendant by means of fraud or deceit, she herself being free from any fraud. The case at bar differs from Everhart v. Searle, 71 Pa. 256, in which the agent, while representing the purchaser, at the same time represented the seller without the purchaser's knowledge. Giving full force to the plaintiff's testimony, it amounts to no more than this, that she engaged him to act as her agent, knowing that he had previously acted as agent for the purchaser, and stipulating that he should "transfer his allegiance" to her. If this was a fraud, it was a fraud upon the purchaser solely, in which the plaintiff knowingly took part. She paid the commission to the defendant voluntarily, with full knowledge of all the facts, and money so paid on an executed contract cannot be recovered back. Her appeal is to the equitable powers of the court, and she ought to come with clean hands. Gisaf v. Neval, 81 Pa. 354, is nearly on all fours with this case, if the testimony for the plaintiff is taken to be true, and ought to have ruled it.

2. The plaintiff having shown the composition of a claim made by the purchaser against the defendant, he was entitled to lay before the jury fully the motives which prompted that settlement; and hence the second assignment of error should be sustained. The third assignment should be sustained also. If, as the defendant testified, his relations with the purchaser had terminated, his contract to act for the plaintiff was a legal one, and the plaintiff could not recover unless, in the sale, he

acted in bad faith to her. The fact that the price obtained was far in excess of the value of the property, was evidence upon the question of the defendant's good faith. And the language of the instructions complained of in the fourth and fifth assignments of error was misleading. The submission of the question whether the plaintiff knew that the defendant represented anybody else, was in the face of her plain admission that she did know he had been employed by the purchaser, and if that employment carried with it an agency for the purchaser to the end of the transaction, she was as much bound to know it as he was.

*Mr. C. Berkeley Taylor*, for the appellee, was not heard.

In the brief filed, counsel cited: (1) Kelly v. Bennett, 132 Pa. 218; Bentley v. Cranmer, 137 Pa. 244; Hoffer v. Wightman, 5 W. 205. (2) Everhart v. Searle. 71 Pa. 256; Rice v. Davis, 136 Pa. 439.

PER CURIAM:

The defendant was a real-estate broker and attempted to serve two masters. There is high authority for saying that this cannot be done: Matt. vi., 24. The plaintiff paid him a commission of five thousand dollars for effecting a sale of certain real estate, in ignorance of the fact that he was also the broker or agent of the purchaser. When she discovered that he was acting in this dual character, she brought this suit in the court below to recover back the money so paid, and succeeded. We have no doubt of the right to recover money paid under such circumstances. It is against public policy and sound morality for a man to act as broker for both parties, unless that fact is fully communicated to them. The right to recover being established, this judgment must stand unless some error was committed on the trial below by which the defendant was prejudiced.

A careful examination of the record fails to disclose any such error. The court was not asked to direct a verdict in favor of the defendant, and could not properly have done so in view of the evidence. This disposes of the first assignment. The second is without merit. The payment of the two thousand six hundred dollars to the Drexels was a fact in the case. The

defendant's belief as to his moral or legal liability to pay this money was not important; nor was it material that he had never made any admissions " to the Masseys, or any one else," upon this subject. The testimony of the witness Shallcross was properly rejected. The plaintiff's right to recover did not depend upon the character of the sale, whether advantageous or otherwise; it rested upon the higher ground of public policy: Everhart v. Searle, 71 Pa. 256. The instructions complained of in the fourth and fifth assignments are free from error. The learned judge fairly submitted to the jury the question of plaintiff's knowledge of the defendant's dual character. There was abundant evidence of her ignorance upon this point to go to the jury. She testified distinctly that the defendant told her he was acting for her, and for her alone. The defendant did not deny that he had been employed by the purchasers. His contention was that he had ceased to act for them before he entered the service of the plaintiff. This was a question of fact for the jury, and unfortunately for the defendant they did not take his view of it.

Judgment affirmed.