THE SKINNER MANUFACTURING COMPANY, A CORPORATION, *Plaintiff in Error,* v. E. E. DOUVILLE, *Defendant in Error.*

1. A carbon copy of a telegram addressed to the president of the defendant company at Battle Creek Sanitarium, Battle Creek, Michigan, was introduced in evidence by the plaintiff over the objection of the defendant, there being no proof that the original had been delivered to the telegraph company for transmission and that the same had been lost or destroyed, and no proof that the said president was at Battle Creek at the time, or that it had ever been delivered to him: *Held,* that as the evidence sought to be established was important the admission of the carbon copy was erroneous.

2. It is the duty of a real estate broker to remain loyal to the interests of his client during the continuance of his agency, to disclose to his principal any fact or circumstance that might naturally tend to influence the latter in the conduct of the transaction, and that would affect his interests. He cannot act adversely to his principal, and if he does so, he forfeits his right to recover compensation for his services.

3. All matters of confession and avoidance including not only those by way of discharge, but those which show the transaction to be either void or voidable in point of law on the ground of fraud or otherwise, must under our system of pleading be specially pleaded. The only exception to the rule is where the case of the plaintiff is based on a violation of some statute or of some rules of public policy, or of public morals.

This case was decided by the court En Banc.

Writ of Error to the Circuit Court for Escambia County.

The facts in the case are stated in the opinion of the court.

*Maxwell & Reeves,* for Plaintiff in Error;

*Jones & Pasco* and *W. C. Fitts,* for defendant in Error.

HOCKER, J.—This case has been before this court before and the decision is reported in 54 Fla. 251, 44 South. Rep. 1014. Upon the record as then presented the judgment below in favor of the defendant in error, Douville, was reversed because of the admission of certain hearsay testimony. As the case is here again on writ of error from a judgment of the court below we deem it necessary to state the issues on which the case was tried, and the substance of the testimony. The amended count in the declaration on which the case was submitted to the jury is as follows:

|  |  |
|---|---|
| E. E. DOUVILLE, <br> v. <br> SKINNER MANUFACTURING <br> COMPANY, A CORPORATION <br> UNDER THE LAWS OF <br> ILLINOIS. | State of Florida, Escambia <br> County Circuit Court, <br> First Judicial Circuit. |

Plaintiff sues defendant because prior to the institution of this suit, to wit, on the first day of July, 1904, the defendant employed the plaintiff, who is a real estate and timber land broker, to procure a purchaser for the pine timber lands owned by the defendant, lying in Escambia and Santa Rosa counties, in the State of Florida, represented by the said defendant to be about 100,000 acres, together with mills, plants and railroads located thereon. That the plaintiff in pursuance of his employment as such broker did procure and introduce to the said defendant one C. M. Covington, and that the defendant subsequently sold all of said lands to the said C M Covington, H. L. Covington, J. R. Saunders and

J. G. Pace; and the plaintiff avers that the sale to the said C. M. Covington, *et al,* was made through the efforts of the plaintiff in interesting the said C. M. Covington in said property; that the plaintiff's acts in this connection were the procuring cause of the sale of the said property for the sum of $500,058.68, and the plaintiff avers that by reason of the premises the plaintiff became entitled to receive from the defendant a commission of two and one-half per cent. of said amount, wherefore plaintiff sues and claims $12,500. Geo. C. Douville, Attorney for Plaintiff."

To this count the defendant company filed the following pleas:

1.    That it did not undertake and promise as in said amended declaration alleged.

2.    That the sale of the property of the defendant in said amended declaration alleged was not caused or procured by the plaintiff or by his efforts.

3.    That the plaintiff did not under any employment by the defendant cause or procure to be made the sale of the property of the defendant to C. M. Covington and others in said declaration alleged."

The plaintiff joined issue on these pleas, and the trial was had thereon resulting in a verdict and judgment for Douville of $15,524.93.

An assignment is based on the admission in evidence of the following telegram:

"August 6th, 1904.

E. T. Skinner,

     Battle Creek Sanitarium,

         Battle Creek, Mich.

Negotiating with Covington sale of your lands. Can we close?

Night.          Douville Timber Land Co "

Mr. Roy Douville testified that he notified Mr. Skinner "these people were our people. * * * I have the telegram by which I notified The Skinner Manufacturing Co. that Covington and Saunders were purchasers of the Douville Agency. The date of it was August 6th, 1904. It was addressed to E. F. Skinner, Battle Creek, Mich. This is a carbon copy of the original. By carbon I mean when we wrote original we have a corbon sheet under the original and make a copy of all our telegrams. I have not the original telegram. Mr. Skinner must have that. The original that was sent must be at the Western Union. They would have destroyed it. We asked for it. I don't know about having invoked any process of the court. We asked for it. I don't know that I understand that to be process of the court. I think I wrote that telegram. Either my brother or I. We were both in the office at that time and we generally wrote telegrams together."

The defendant objected to the admission of this telegram upon the ground that it was not the best evidence, and that there was no evidence it was ever delivered to the telegraph company for transmission. These objections were overruled and the telegram was admitted in evidence.

There is no question that if there had been positive proof that the original telegram had been delivered to the telegraph company and was lost or destroyed the carbon copy when proven to be such would have been proper evidence. But there is no positive proof that the original was ever delivered to the telegraph company for transmission to Battle Creek. The telegram may have been addressed to Mr. Skinner at Battle Creek and yet never transmitted to him. There is no proof that Mr. Skinner was at Battle Creek on August 6th, 1904, or that he ever received the telegram. On the contrary Skin-

ner says that he left Battle Creek about first of August, and denies that he ever received the telegram.    As the object of this evidence was to show Skinner was put on notice that Douville had procured Covington as a purchaser of the property, it was a very important part of the testimony.    It seems to us the court erred in permitting this telegram. to go to the jury and that this error requires a reversal of the judgment inasmuch as we said when the case was here before, the question is a close one whether Douville has shown a contract with the defendant for the sale of its lands.

The defendant requested the court to give the following instruction to the jury: "If the plaintiff and its agents withheld from Skinner or the defendant any notice that they claimed commissions for effecting the sale of the defendant's property to Saunders and his associates in order that the defendant might be induced to sell the property under the belief that it would not have to pay commissions therefore, the plaintiff cannot recover."    The defendant also requested that the jury be directed to find a verdict in his favor.    These instructions were refused and these rulings are assigned as error    Mr. George Douville, one of the agents of Mr. E. E. Douville, who represented him, and to whom he turned over the completion of the sale of the defendant's lands, when he went North in the Summer of 1904, testified as a witness for the plaintiff that he had his first conversation with Mr. Saunders, who took the option on the lands which resulted in the sale to Saunders, Covington and others, late in September, and learned from Saunders that negotiations were pending, and the deal for the lands was about to be closed, that they (himself and brother) told Mr. Saunders then that they had a deal with Skinner and were expecting a commission; that Saunders said be quiet about the commissions;

that he had a trade with Skinner and if they mentioned the fact of a commission it would perhaps turn over the trade, and they did not do it.    There is no proof that Mr. E. F. Skinner had any knowledge whatever that the Douvilles were in any way instrumental in causing Saunders to become interested in the lands, and Mr. Skinner denies that he had any such knowledge.    So far as the record shows Mr. Skinner sold the lands to Saunders and others, with no knowledge that commissions would be claimed by Mr. E. E. Douville or any one else.    The questions presented by these assignments are interesting.    It is unquestionably the law that a broker employed to effect a sale or find a purchaser must exercise the utmost good faith towards his principle.    4 Am. & Eng. Ency. Law, 971.    This doctrine is applied in the case of Mullen v. Bower, 22 Ind. App. 294, 53, N. E. Rep. 790, in which the broker was employed to find a purchaser, and in which there was a concealment of the claim of commissions in order that a sale might be effected.

In Cotton v. Holliday, 59 Ill. 176, it is said that an agent must not put himself during the continuance of his agency in a position adverse to that of his principal. (See the discussion of this question and authorities cited in the note to the case of Leathers v. Canfield, (Mich.) 45 L. R. A. 1, text 33.

In 2 Clark and Skyles on Agency, § 763, it is said: "One of the first duties that a broker owes to his client is to remain loyal to the latter's interests.    By reason of the fact that the client has employed him in preference to others great confidence and trust has been reposed in him.    Consequently it is his duty to do nothing that will abuse or destroy that confidence or trust, but to always remain faithful and loyal to his principal's interests.    Thus it is his duty not to undertake in-

compatible duties, nor to assume incongruous characters, nor to act in a transaction where he has or represents interests adverse to those of his principal. So it is his duty at all times to disclose to his principal any facts or circumstances that may make his interests or those of another whom he represents, adverse to his principal's interests, or that may affect the latter in any way. If he does not undertake to present adverse interests or acts adversely to his principal in any part of the transaction or does not disclose any interest that would naturally tend to influence his conduct of the transactions it would be such a fraud upon the principal as would render the broker liable to the principal for any loss sustained thereby, or as would preclude the broker from recovering any compensation for his services." See 93 Am. Dec. note to Walker v. Osgood, p. 174; Wilkinson v. McCullough, 196 Pa. St. 205, 46 Atl. Rep. 357, 79 Am. St. Rep. 702, and note p. 706. It seems to us that granting Douville though he had an agency to sell the land of the defendant to Saunders and others and that he was the procuring cause of the sale, yet it plainly appears that E. E. Skinner thought he had no such agency. This is plainly evident from the correspondence in July, 1904. Under these circumstances the plaintiff permitted Saunders to proceed with his negotiations with Skinner and allowed Skinner to remain under the impression that he was making a sale direct to Saunders, without incurring any liability for commissions to any one. Under such circumstances it was peculiarly the duty of Douville to inform Skinner he would claim commissions on the sale to Saunders so that Skinner might have acted in such a way as to protect himself. For a general discussion of the subject see Quist v. Goodfellow, 9 Am. & Eng. Anno. Cas. 431, and note. But it is contended by the defendant in error that the plaintiff in error is not in

a position to avail itself of the defence of fraud on the part of Douville and his agents in connection with this transaction because it is not pleaded as a defense. We have given this question a very thorough examination and our conclusion is that the contention of the defendant in error is correct.

Rule 66 of the Circuit Court in Common Law Actions provides that "in every species of actions on contract all matters in confession and avoidance including not only those by way of discharge, but those which show the transaction to be either void or voidable in point of law on the ground of fraud or otherwise shall be specially pleaded." The only exception to the rule requiring defences to be pleaded that we are aware of, is where the case of the plaintiff is based on a violation of some statute, or of some rule of public policy or public morals,— in other words where the contract sued on is illegal. 2 Hughes on Procedure, pp. 765, 934. In the instant case the contract sued on was not illegal and the peculiarity of it is, that the defensive matter which the defendant strove to avail itself of by instructions to the jury came out in the plaintiff's evidence. It does not appear that the defendant previously had any knowledge of what had occurred between the Douvilles and Saunders. We think that under our system of practice the defendant, if it desired to avail itself of this defensive matter should have requested permission to file an additional plea setting up this matter as a defence. Under our liberal system of amendments which looks towards reaching the real merits and justice of the controversy such a request would have been proper. The defendant we think mistook its remedy in endeavoring to protect itself by instructions, without pleas presenting the issues on which they were based. As we can perceive no evidence of an intention to delay, or obstruct the administration of jus-

tice in the conduct of the defendant, we think that if an application to file an additional plea is made, and a proper one is presented, the application should be granted, in order that the real merits and justice of this controversy may be determined.

There are several other assignments of error, but they do not seem to us to be of vital importance and we do not think it necessary to discuss them. The judgment of the Circuit Court is reversed and a new trial is granted.

All concur, except PARKHILL, J., absent on account of illness.