THE BURNHAM CITY LUMBER COMPANY, A CORPORATION, *Plaintiff in Error*, v. WILLIAM R. RANNIE, *Defendant in Error*.

1. A declaration in a suit to recover commissions paid the defendant by plaintiff, and that substantially charges that the defendant undertook to obtain from the owners of land a contract embracing terms demanded by T. who was seeking to buy it for the plaintiff a corporation to be organized to take them over, that the defendant represented to T. that the land could not be bought for a less price than that which he named to T., when in fact that price, unknown to T. or the corporation to which they were conveyed, covered commissions which the defendant was to receive from the owners, and which commissions on the completion of the transaction in ignorance of the facts were actually paid by the owners to the defendant, states a good cause of action.

2. When a person is employed to act as agent for another in dealing with a third person, and the nature of the employment is such that he is required to exercise judgment, discretion or personal influence in the execution of such agency, he cannot act also as agent of the third party in the transaction without the knowledge and consent of his principal.

This case was decided by Division B.

Writ of error to the Circuit Court for Duval County.

STATEMENT.

The plaintiff in error sued the defendant in error in the Circuit court of Duval County in an action at law to recover the sum of $50,000.00 alleged to have been fraudulently had and received by the defendant of the plaintiff as commissions on the purchase price of certain real estate. There are six counts in the declaration. The last, a count for money had and received, and the fourth are abandoned. The first count is as follows:

"Burnham City Lumber Company, a corporation created and existing under the laws of New York and having its principal place of business at New York City, County of New York, State of New York, by Owen & Royall, and Young & Adams, its attorneys, sues William R. Rannie, for that, whereas, heretofore, to-wit: Between the 5th day of December, 1905, and the 12th day of January, 1906, the said defendant made and entered into an agreement with one J. C. Turner and therein and thereby agreed with said Turner to act as the agent and broker of said Turner in purchasing for him from A. T. and F. W. Squires, certain timber lands situated in Taylor County, Florida, containing 45,000 acres of land, or thereabouts; that as such agent and broker and in and by the terms of said agreement the said defendant covenanted and agreed with the said Turner to use his. best efforts in purchasing said timber lands for said Turner at the lowest possible price at which the same could be obtained and in performing his duties as such agent and broker for said Turner in regard to the purchase of said lands to observe the highest degree of good faith towards the said Turner and not to receive any other commission or brokerage or compensation whatsoever for procuring the sale of said lands to the said Turner, except such sum as it was agreed should be paid to the defendant by the said Turner for his said services as such broker and agent, and that the defendant then and there at all times stated to the said Turner that the price at which defendant stated to him said timber lands could be purchased was the lowest price at which said lands could be purchased and that the defendant had no agreement whatsoever by which he was to receive any commission whatsoever from the owner of said lands or from anyone else whomsoever for bringing about a sale thereof to the plaintiff. That said Turner believed and relied on the said statements of

said defendant and in the full belief thereof and reliance thereon agreed to pay to the defendant, in case he purchased said timber lands, a commission or brokerage amounting to fifty thousand ($50,000.00) dollars, or thereabouts; that afterwards, the said Turner, who had been acting for the plaintiff in the said transaction, as the said defendant well knew, assigned his rights under said agreement with the defendant to the plaintiff, to which assignment the said defendant agreed and consented; and the plaintiff believing and relying on the said statements of the defendant to said Turner, as the defendant well knew, and in full belief thereof and reliance thereon assumed the obligation of said Turner to pay to the defendant in the event of the purchase of the said timber lands a commission or brokerage amounting to fifty thousand (50,000.00) dollars or thereabouts.

That subsequently, and on or about the 29th day of June, 1906, at the City of Jacksonville, Florida, the plaintiff did purchase said timber lands from said A. T. and F. W. Squires and immediately thereafter, without having any knowledge that said defendant had not exercised the highest degree of good faith in his dealings with the plaintiff as plaintiff's agent and broker, and without knowing that defendant had an agreement with the sellers of said lands to receive from them a commission for bringing about a sale thereof, paid to said defendant the sum of fifty thousand ($50,000.00) dollars.

That the said defendant did in fact at all said times, without plaintiffs' knowledge or consent have an agreement with said A. T. and F. W. Squires, the sellers of said timber lands for a commission or brokerage for bringing about the sale thereof, and that the price at which said defendant sold said lands to the plaintiff was not the lowest price at which said lands could be procured, and that the defendant did not exercise the highest

degree of good faith in his dealings with the plaintiff as its agent and broker, but, on the contrary, sought to further the interests of the defendant himself and to cheat and defraud the plaintiff by causing it to pay a larger commission than it would otherwise have paid.

That the defendant on or about the 29th day of June, 1906, without plaintiff's knowledge or consent was paid by and received from said A. T. and F. W. Squires as commission for bringing about a sale of said timber lands to the plaintiff a commission of two and one half per cent of the purchase price at which the property was purchased by the plaintiff from said A. T. and F. W. Squires.

That plaintiff was wholly unaware that defendant had an agreement to receive commission from the sellers of said timber lands or that he had received the sum as aforesaid on or about the 29th day of June, 1906, or that he had in any way failed in his duty as the agent and broker of the plaintiff until after plaintiff had paid to defendant said sum of fifty thousand ($50,000.00) dollars as defendant's commission or brokerage for bringing about the sale of said premises to the plaintiff.

That because of defendant's said acts as aforesaid, defendant forfeited and lost all right and claim to receive from the plaintiff said sum of fifty thousand ($50,000.00) dollars, or any other sum as commission, and that said sum of fifty thousand ($50,000.00) dollars so paid defendant by plaintiff as aforesaid, without plaintiff's knowledge of said deceit and wrongful acts on the part of the defendant, was then and there wrongfully and fraudulently had and received by the defendant from plaintiff. That no part of the same had been paid by the defendant to the plaintiff, although duly demanded prior to the commencement of this action, and plaintiff claims seventy-five thousand ($75,000.00) dollars as damages."

The second count is generally like the first count except that it alleges the agreement to have been between the defendant and plaintiff through one J. C. Turner who was acting for the plaintiff, and alleges a breach of faith on the part of Rannie in' endeavoring to have the land overestimated in order to cause plaintiff to pay more for said property than plaintiff would have paid had the estimate been a correct and proper one.

The third and fifth counts are as follows:

"3.   And the said plaintiff, by its said attorneys, further sues the said defendant for that whereas, heretofore, to-wit: Between the 5th day of December, 1905, and the 12th day of January, 1906, the said defendant, for the purpose of inducing the plaintiff to employ the defendant as its broker and agent in purchasing from A. T. and F. W. Squires certain timber lands situated in Taylor County, Florida, and to pay defendant a commission as such broker and agent, falsely and fraudulently, and with intent to deceive and defraud the plaintiff, represented and stated to one J. C. Turner, who, as defendant well knew, was acting for the plaintiff in said transaction, that the price at which the plaintiff was offered said lands by defendant was the lowest price at which defendant could procure same for the plaintiff and that defendant had no agreement whatsoever with said A. T. and F. W. Squires or with anyone else, whereby defendant was to receive any commission or brokerage for bringing about a sale of said lands to plaintiff.   That the plaintiff relied upon the statements of said defendant and believed the same to be true, and relying on, and believing the same, then and there through said Turner employed said defendant as plaintiff's broker and agent in the purchase of said lands and agreed to pay to the defendant, in case plaintiff purchased said lands a commission of fifty thousand ($50,000.00) dollars.   That nevertheless said statements

were, as defendant well knew, wholly false and fraudulent and that at all said times defendant had an agreement with said A. T. and F. W. Squires, under the terms of which defendant was to receive a commission of two and one-half per cent in case he brought about a sale of said lands to said plaintiff and that, as defendant well knew, the price at which said lands were offered by defendant to plaintiff was not the lowest price at which defendant could procure the same for plaintiff.

That in pursuance of said agreement so entered into by plaintiff with defendant, and in reliance upon the said false and fraudulent statements of said defendant, and not knowing the same to be false, plaintiff subsequently and on or about the 29th day of June, 1906, purchased said lands from said A. T. and F. W. Squires, and thereupon paid to said defendant said commission of fifty thousand ($50,000.00) dollars. That subsequently and on or about the 5th day of February, 1907, plaintiff learned for the first time that said defendant's said statements and representations to plaintiff were false and fraudulent and that defendant had at all said times an agreement and contract with said A. T. and F. W. Squires whereby defendant was to be paid by said A. T. and F. W. Squires a commission for bringing about a sale of said lands and that defendant was at all said times acting in, the interest of said A. T. and F. W. Squires as their broker or agent and not in the sole interest of the plaintiff, and that defendant had on or about the 29th day of June, 1906, received from said A. T. and F. W. Squires a certain sum of money in cash, being a commission of two and one-half percent on the price at which said lands had been purchased by the plaintiff and that the price at which plaintiff had purchased said lands was not the lowest price at which the defendant might have offered said lands to plaintiff for purchase.

That because of said defendant's fraud and deceit as aforesaid the said sum of fifty thousand ($50,000.00) dollars so paid·as aforesaid by plaintiff to defendant on or about the 29th day of June, 1906, was money wrongfully and fraudulently had and received by the defendant from plaintiff. That thereafter and before this action the plaintiff demanded payment thereof from the defendant, but the defendant has not paid any part thereof, and plaintiff claims seventy-five thousand ($75,000.00) dollars as damages."

"5.   That heretofore, to-wit: in January, 1906, defendant was a real estate broker negotiating with one J. C. Turner for the sale of certain timber lands in Florida to a corporation to be organized by said Turner and his associates, which corporation was thereafter organized and is the plaintiff; that during the said negotiations defendant disclosed to said Turner the existence of a writing by the owners of said lands whereby the owners of said timber lands agreed to sell to defendant or his assigns said timber lands for a price therein named, and defendant thereupon represented to said Turner that said price was the lowest price at which said timber lands could be obtained, and that said price did not include any commission to defendant; and said defendant did then and there contemplate and intend that said representation should be relied upon by said Turner, or by said Turner and his associates, duly incorporated as the plaintiff, in subsequent dealings with defendant; that thereupon said Turner caused to be prepared a contract for the sale of said timber lands upon certain terms and conditions therein set forth differing in some respects from the above mentioned writing by the owners of said lands, but at the price specified in the above mentioned writing by the owners of said lands, and agreed with said Rannie by and through one W. P. Smith acting in

behalf of said Rannie that if the said Rannie could procure the owners of said lands to sell the same upon the terms and conditions set forth in said contract, he should be paid a commission of twenty cents per thousand feet upon all the timber upon said timber lands as ascertained by an estimate to be made in accordance with certain provisions of said contract; that thereafter, on to-wit: the 15th day of June, 1906, this plaintiff became duly incorporated and took over by valid assignment all of the rights and liabilities of said Turner under the said agreements made in its behalf by said Turner, and on, to-wit: the 28th day of June, 1906, said Rannie having procured the owners of said lands to enter into a contract in terms satisfactory to said Turner, the title to said lands was conveyed to the plaintiff, and plaintiff thereupon relying upon the representations of the defendant that said price was the lowest price at which said timber lands could be obtained, and that said price did not include any commission to defendant, and believing said representations to be true as made, and without any knowledge or information, upon its part or upon the part of said Turner or his associates, that defendant was in the transactions above mentioned the agent of the sellers of said lands, made or caused to be made in payment of said Rannie's said commission two certain negotiable promissory notes to said Rannie by and through said W. P. Smith acting in behalf of said Rannie each in the sum of Twenty Five Thousand Dollars, which said notes were negotiated by said Rannie or by said Smith acting in behalf of said Rannie, and which said notes were paid or caused to be paid by plaintiff at maturity. That during all of the times aforesaid the owners of said lands had engaged to pay to said Rannie or the firm of real estate brokers whereof said Rannie was a member a commission contingent upon his or their effecting a sale of said lands

and did in fact pay said Rannie a large commission, to-wit: thirty-one thousand, seven hundred dollars, for effecting the sale of said lands, and the aforesaid representation of said Rannie that said price was the lowest price at which said timber lands could be obtained and that said price did not include any commission to defendant was false and fraudulent at the time it was made, and then and there known to defendant to be false and fraudulent. Wherefore, plaintiff sues and claims one hundred thousand dollars damages."

These counts were severally demurred to, and the demurrers were sustained in the Circuit Court. Such of them as are argued here in the briefs will be noticed in the opinion. The plaintiffs having declined to plead further, a final judgment was entered against it, which is brought here on writ of error for review.

*Bisbee & Bedell* and *W. B. Owen,* for Plaintiff in Error;

*Barrs, Odom & Browder* and *J. L. Doggett,* for Defendant in Error.

HOCKER, J.—(*After stating the facts.*)—The plaintiff in error discusses first in his brief the fifth count of the declaration, the defendant in error follows that order, and we will do the same. It is first contended by the defendant in error that this count first assumes that the defendant Rannie was a real estate broker and was acting in that capacity in his dealings with Turner, and that in the next paragraph this assumption is negatived by the allegation that during the negotiations defendant disclosed to said Turner the existence of an agreement in writing between the owners of the land and Rannie whereby the former agreed to sell to the latter or his

assigns the said timber lands for a price therein named.
It is contended by the defendant in error that this clearly
shows an option and a vested interest in the property in
the defendant; that the relation of vendor and purchaser
existed between Turner and Rannie and that they were
dealing at arms length with each other. If this were all
that the count contains on that feature of the case there
would be something in this contention; but it clearly
appears that Turner did not buy this contract. He pro-
posed to Rannie to obtain another contract from the
owner, differing in some respects from Rannie's contract,
and to give him a large commission if he would procure
the owners to sell under this last contract. Rannie
accepted this proposition and procured the sale and con-
veyance to the plaintiff under this last contract. It is
plain, we think, that if the written agreement to sell
shown by Rannie to Turner was a *bona fide* agreement of
sale, Rannie abandoned it when he procured the owners
to sell the lands to the plaintiff under another agree-
ment. The fifth count taken as a whole clearly alleges,
we think, that Rannie was acting as the agent of Turner
who was himself acting for the plaintiff, a corporation
to be formed for taking over these lands. Under the last
contract he was to receive, and did receive, commissions
from the plaintiff. If he was merely selling his vested
interest, why should he receive commissions for selling
his own property? We discover nothing contradictory
in this count, which apparently undertakes to state the
whole transaction just as it occurred, and we think that
the count taken as a whole excludes the idea that Rannie,
in consummating this sale was acting for himself alone
and not as agent for Turner. The effect of this count is
that Rannie represented to Turner that the lands could
be bought at a price which was stated in the writing he
exhibited, that the price was the lowest price at which

they could be bought. Rannie then at Turner's request undertakes and procures the sale of these lands to the plaintiff at that price for a large commission, at the same time receiving from the owners a large commission for the sale. What was the exact relation between the owners and Rannie is not clearly apparent. It would seem that while he had some sort of written agreement from them to sell him the land, yet he was to get a commission from the owners on the sale to himself. If such was the relation between them it does not in the least relieve him from his duty to Turner for it has the appearance of being a sort of blind to enable him to act as though he had bought the property, while in fact he was simply an agent to sell on a commission. It seems to us that this count alleges that Rannie acted as the agent of Turner in securing the purchase of the lands for the plaintiff; that he received commissions from the plaintiff and at the same time, unknown to the plaintiff, received commissions on the sale from the owners of the land.

It is not disputed that if Rannie had been simply a middle man between Turner and the owners to bring them into communication with each other in order that they might do their own trading, and with nothing more to do than this, he might have legally recovered commissions from both—for the simple reason that no trust of any kind would then have been reposed on him by either. Nor is it disputed if Turner or the plaintiff had known he was to receive commissions from the owners on the sale, that the plaintiff would have had no ground of complaint. The count negatives any such knowledge on the part of either the plaintiff or Turner.

In the case of Skinner Mfg. Co. v. Douville, 57 Fla, 180, 49 South. Rep. 125, this court had occasion to examine the duties of a real estate broker or agent to his principal. It was there stated that "it is the duty of a real estate

broker to remain loyal to the interests of his client during the continuance of his agency, to disclose to his principal any fact or circumstance that might naturally tend to influence the latter in the conduct of the transaction, and that would affect his interests. He cannot act adversely to his principal, and if he does so, he forfeits his right to recover compensation for his services." It is said in the opinion, p. 185: "It is unquestionably the law that a broker employed to effect a sale or find a purchaser must exercise the utmost good faith towards his principal." See authorities cited in the opinion.

In the case of Carter v. Owens, 58 Fla. 204, 50 South. Rep. 641, it is held: "A real estate broker employed to sell or to find a purchaser for land is bound to disclose to his principal any facts known to him material to the transaction; and if the broker takes part in the negotiation he is bound to exert his skill for the benefit of his principal. Any concealment from the principal of material facts, known to the agent, or any collusion by the latter with the purchaser, will forfeit the right of the agent to compensation for his services. These cases in a general way set forth the duties of a real estate broker to his principal.

In the case of Farnsworth v. Hemmer, 1 Allen (Mass.) 494, it is held: "A broker who has acted for both parties in negotiating an exchange of real estate between them without informing either that he was employed by the other, is not legally entitled to commissions for his services; and evidence in his behalf to show a custom among brokers to charge a commission to both parties in such cases is admissible." The court in its opinion holds that an agent cannot be permitted to act for both vendor and purchaser without their authority or consent and luminously sets forth the reasons why he should not be per-

mitted to assume relations so essentially inconsistent and repugnant to each other.

In the case of Berlin v. Farwell, (Cal.) 31 Pac. Rep. 527, it was held that a person could not act as the agent of both the vendor and purchaser in the same transaction, and where he sued under a contract with the defendant to find a purchaser, and was employed by the purchaser without defendant's knowledge to buy the land from the defendant at a price which would suit the views of the purchaser he could not recover commissions from the defendant.

In the case of McKinley v. Williams, 74 Fed. Rep. 94, it is held that an agent of a vendor who speculates in the subject-matter of his agency or intentionally becomes interested in it as a purchaser, or as the agent of a purchaser, violates his contract of agency, betrays his trust, forfeits his commissions as agent and becomes indebted to his principal for the profits he gains by his breach of duty.

In the case of Cannell v. Smith, 142 Pa. St. 25, 21 Atl. Rep. 793, 12 L. R. A. 395, it is held that money paid to a broker for effecting a sale of real estate in ignorance of the fact that he is also the agent of the purchaser may be recovered back, even if the sale is an advantageous one.

In Rice v. Wood, 113 Mass. 133, it is held that a broker acting for both parties in effecting an exchange of property can recover compensation for neither, unless his double employment was known and assented to by both. To the same effect see Green v. Southern States Lumber Co., 141 Ala. 680, 37 South. Rep. 670; Murray v. Beard, 102 N. Y. 505, 7 N. E. Rep. 553; Bunn v. Keach, 214 Ill. 259, 73 N. E. Rep. 419; Boswell v. Cunningham, 32 Fla. 277, 13 South. Rep. 354; Phinney v. Hall, 101 Mich. 451, 59 N. W. Rep. 814; Walker v. Osgood, 98 Mass. 348; Henderson v. Vincent, 84 Ala. 99, 4 South. Rep. 180.

In Hanna v. Haynes, 42 Wash. 284, 84 Pac. Rep. 861, it is held that a broker employed to purchase land who conceals from the purchaser the fact that the vendor will pay the broker a commission on making a sale, has the burden of proving perfect fairness in the transaction, and in the absence of satisfactory proof equity will treat him as guilty of constructive fraud.

In the case of Palmer v. Pirson, 24 N. Y. Supp. 333, 4 Misc. Rep. 455, it was held that where the commissions for the sale of property are paid in ignorance of fraud on the part of the agent, in consequence of which he was not entitled to recover such commissions the amount so paid may be recovered. This judgment was affirmed in 144 N. Y. 654, 39 N. E. Rep. 494.

In Clark and Skyles on Law of Agency, Vol. 1, paragraph 364, it is said: "When a person is employed to act as agent for another in dealing with a third person, and the nature of the employment is such that he is required to exercise judgment, discretion or personal influence in the execution of the agency, he cannot act also as agent of the third party in the transaction without the knowledge and consent of his principal, for he would thus occupy a position inconsistent with the trust reposed in him by his principal. If, therefore, a person employed to act as agent of another in dealing with a third person involving the exercise of judgment, discretion or personal influence, acts also as agent of such third person, without the knowledge of either, he cannot recover compensation from either; and if he so acts with the knowledge and consent of one only, he cannot recover compensation from the other. If compensation is paid to an agent by his principal in such a case in ignorance of the fact that he was acting for both parties it may be recovered back. Some cases go further than this and hold that an agent

acting for two principals at the same time, and in the same transaction, can recover no compensation from either of them unless his double agency is known and assented to by both parties." It is further stated in section 405 Id. that an agent will not be allowed to assume any position which is inconsistent with his duty to be loyal to his principal, or to place himself in an attitude of antagonism to the interests of his principal. He not only will not be allowed to acquire any personal interest or advantage by an actual violation of his duty, but he also will not be allowed to take a position without his principal's knowledge and consent which will have a tendency to cause him to violate such duty; and to act in his own interest rather than that of his principal. If he does so the principal may compel him to account, or set the transaction aside according to circumstances, and no local custom or usage can be shown to avoid this rule.

Upon this question of the duty of an agent to be loyal to his principal it would be useless to add more authority. The law is all one way.

The next contention by the defendant in error in support of the ruling below, is that the fifth count of the declaration shows no privity between the plaintiff and the defendant that the transaction between Turner and defendant took place in January, 1906, and the plaintiff corporation was not incorporated until nearly six months afterwards; that the action of this case is based on an alleged tort practiced by Rannie on Turner and could not be assigned at common law, and cannot be assigned in Florida. This contention ignores the allegation of the declaration that Turner negotiated with Rannie for the sale of certain timber lands to a corporation to be organized by Turner and his associates, which corporation was afterwards organized and that to it the rights and liabili-

13—Vol. 59.

ties of Turner were assigned; that the lands were conveyed to it by the owners and that the plaintiff corporation, relying on the representations of Rannie that the price paid by it was the lowest price at which the lands could be bought, paid him the commissions of $50,000.00. The count shows that the transaction inaugurated by Turner with Rannie was completed with the latter.

In the case of The Scholfield Gear and Pulley Company v. Scholfield, 71 Conn. 1, 40 Atl. Rep. 1046, the defendant made false representations to individuals as to the value of a patent. These individuals organized the plaintiff corporation to take over the patent and work it, and this was carried out, the corporation paying the defendant $5,000.00 for the patent. It was also alleged that the false representations were made to the directors of the corporation after its organization. The action was brought to recover the $5,000.00, and other damages. It was held that proof of either set of false representations —those made to the individuals or those made to the directors would sustain the action. In a very lucid opinion the court demonstrates that it is immaterial whether the false representations were made to the promoters of the corporation before it was formed, or to the directors after it was formed, since the corporation was formed for the purpose of acting on those representations. So in the instant case the count alleges that the defendant Rannie negotiated with Turner for the sale of certain timber lands to a corporation to be organized by Turner and his associates. These negotiations resulted in the lands being conveyed to the corporation and the commissions being paid by it to Rannie. To the like effect see Iowa Economic Heater Co. v. American Economic Heater Co., 32 Fed. Rep. 735, and In Re Canadian Oil Works Corporation—Hays Case—L. R. 10 Chan. App. Cas. 593.

It seems to us that the fifth count of the declaration substantially charges that the defendant undertook to obtain from the owners of the land a contract embracing terms demanded by Turner, that he represented to Turner the land could not be bought for a less price than that which he named, when in fact that price, unknown to Turner of the plaintiff, covered commissions which Rannie was to receive from the owners, and which on the completion of the transaction were actually paid by the owners to Rannie, that Rannie was trusted by Turner and by the plaintiff, that his conduct was inconsistent with that open fair course of dealing which the law requires of an agent, and that the fifth count substantially states a cause of action, and was not demurrable.

What we have said of the fifth count applies also to the first, second and third counts. The fourth count is abandoned by the plaintiff in error.

We think the court below erred in sustaining the demurrers to these counts, and, therefore, said judgment is reversed, and the case remanded.

TAYLOR and PARKHILL, J. J., concur.

WHITFIELD, C. J., and SHACKLEFORD and COCKRELL, J. J., concur in the opinion.