209 So.2d 240 (1968)
Helen HERSHEY, Appellant,
v.
The KEYES COMPANY, a Florida Corporation, and Mac D. Moore, Appellees.
No. 67-169.
District Court of Appeal of Florida. Third District.
February 27, 1968.
Rehearing Denied May 8, 1968.
Shutts & Bowen and Thomas Anderson, Miami, for appellant.
*241 Miller & Miller, Herbert W. Vogelsang, Miami, for appellees.
Before PEARSON, BARKDULL and SWANN, JJ.
BARKDULL, Judge.
This is an appeal by the appellant from an adverse final judgment rendered on a jury verdict and the denial of her motion for new trial. The suit instituted in the trial court was to recover from a real estate concern for alleged breach of duty by its agent in failing to disclose facts material to the seller in connection with a sale of real estate.
The record on appeal reveals the following. Helen Hershey was the owner of a lot in downtown Miami, west of the terminal of Trailways Tours. Trailways sought a variance to relax the zoning regulations and, at a public meeting held in September of 1962 to consider this, Mrs. Hershey met Mac D. Moore [who at that time was acting as a representative for Trailways]. Moore is a vice-president of The Keyes Company and is a qualified real estate broker. According to Moore, shortly after the meeting Mrs. Hershey asked him if he could find a buyer for her property. She was asking $50,000.00 cash for it and, accordingly, he quoted this price to a customer of his by the name of Dick whom he represented in other transactions.
Mrs. Hershey told Moore that she had already talked with the Trailways representatives and if Moore should try to sell the property to that company she would not pay him a commission. Moore then apparently entered into negotiations with Dick and Trailways, by which the latter agreed to lease the property from Dick for a net rental of $4,000.00. On November 30, 1962, Moore prepared a letter for Trailways to sign, which was addressed to him and which said:
"We enclose herewith proposed lease on the above property which has been examined and approved by us as to form and content, together with a check in the amount of $500 payable to your firm, to be held by your firm as deposit to assure our entering into such a lease, subject to the usual terms and conditions in regard to deposits made for the purchase of real property on the standard deposit receipt form as used by your company.
"We hereby offer to enter into a lease on the above described property subject to the terms and conditions set forth in that instrument hereto attached and by reference made a part hereof.
"Considering the difficulties involved on your side in working out this transaction, we shall allow until January 1st for acceptance or rejection of this offer, although we would appreciate being advised of a decision thereon at the earliest possible time. Considering the fact that the property lease will commence February 1, 1963, and that it is necessary that the title be examined by us prior to that date, we feel that we must have an answer from the proposed lessors not later than January 1, 1963.
"The proposed lessors may accept this offer by signing the enclosed copy hereof, and return it to us through your office."
This was over a month prior to a time when Moore approached Mrs. Hershey with a contract signed by Dick. Later, on January 7, 1963, Moore wrote to Trailways, in which letter he said:
* * * * * *
"* * * In the meantime I have learned that someone else has approached Mrs. Hershey for the purchase of this property and I do not want to see anything come in at this time and upset our deal. These other people are perfectly willing to go in and purchase the property from Mrs. Hershey now but they want to be sure that they will have the lease with you. I believe I can get Mrs. Hershey to accept a deposit receipt with one thousand dollars as a deposit from these people and they, in turn, would like to get a $1,000 deposit from you for faithful performance of the lease. In this manner, should you default *242 for any reason on going through the lease, and they would have no further need for the property and would subsequently have to default on that, they would not be out of their pocket." [emphasis added]
* * * * * *
Then, Moore went to Mrs. Hershey with a contract dated January 16, 1963, by which she was to sell the property to Dick for $42,500.00. She refused to sign the contract unless the price were $45,000.00. Moore changed the price to $45,000.00 and Mrs. Hershey initialled it and he "finally persuaded" Dick to "accept" the $45,000.00 price.
At the time that Moore presented this contract to Mrs. Hershey, he had in his possession [without her knowledge] a letter from Trailways enclosing a check to Moore for $500.00 as a good faith deposit on a lease for 20 years at $4,000.00 a year net on Mrs. Hershey's property. The lease was to contain a provision for a ten year renewal at an advance in the rent of $400.00. The lease from Dick and his associates to Trailways was executed on February 14, 1963, although they did not acquire title from Mrs. Hershey until March 15, 1963.
The Keyes Company was paid a commission of $2,375.00 from the Hershey sale to Dick, and a commission on the Dick-Trailways lease of $2,400.00, making a total of $4,775.00.
The main point on this appeal is whether or not a real estate agent is required to disclose to his principal material facts related to the transaction out of which he earns his commission. The broker's contention is that as long as the seller receives a price for the property which is equal to or in excess of the value thereof, notwithstanding the fact that the seller demanded a higher price, he is under no duty to disclose facts material to the transaction.
It would appear that at this time we would not be amiss in stressing the obligation reposed in a real estate broker to his principal or employer. The essential and basic feature underlying the relation of a broker to his employer, often called a principal or, improperly, a client is that of agency. Quinn v. Phipps, 93 Fla. 805, 113 So. 419, 54 A.L.R. 1173; 5 Fla.Jur., Brokers, § 15; 3 F.L.P., Brokers and Brokerage, § 5. A real estate broker is an agent of his principal in every sense, and when the relationship is undertaken a fiduciary relationship is created, and it is the duty of the broker to remain loyal to the interests of his principal during the continuation of his agency. Quinn v. Phipps, supra; 5 Fla.Jur., Brokers, § 22; 3 F.L.P., Brokers and Brokerage, § 5. As so eloquently stated by Mr. Justice Terrell in the case of Quinn v. Phipps, supra:
* * * * * *
"The real estate business is not an avenue by which one may practice the tricks of his trade or prey on the innocent and unsuspecting purchaser, nor is it a cloak to cover fraud and deception, or a means for designing persons to short-circuit those who would deal squarely and in good faith. It is indeed a highly respectable business or profession; its ethics are well defined and presumed to be known to those who patronize or engage in that business. No business known to modern society has a longer or more respectable history. Real estate is a primary security for credit in all the civilized countries of the earth, and the real estate broker in our time, and long has been, the medium through which annually many millions of dollars in earnings and savings are secured or invested. He is the agent of his principal in every sense, and when that relation is undertaken, a fiduciary relation is created which bars the agent from becoming interested in the business or property antagonistic to his principal without his knowledge or consent. Every man, in other words, to whom a business is entrusted by another, has a trust to perform; and every man is a trustee whose business is to advise concerning or to operate the business of another."
* * * * * *
*243 A real estate broker must deal fairly and in good faith with his principal. Quinn v. Phipps, supra; 5 Fla.Jur., Brokers, § 22; 3 F.L.P., Brokers and Brokerage, § 16. This rule, requiring a broker to act in good faith towards his principal, places him under a legal obligation to make full, fair and prompt disclosure to his employer of all facts within his knowledge which are or may be material to the matter in connection with which he is employed. MacGregor v. Florida Real Estate Commission, Fla. 1958, 99 So.2d 709; 12 Am.Jur.2d Brokers, § 89; 5 Fla.Jur., Brokers, § 23. When a real estate broker is employed to sell or find a purchaser for land, he is bound to disclose to his principal any fact or circumstance known to him material to the transaction which might influence the principal in the conduct of the transaction. Skinner Manufacturing Company v. Douville, 57 Fla. 180, 49 So. 125; Carter v. Owens, 58 Fla. 204, 50 So. 641, 25 L.R.A.,N.S., 736; Burnham City Lumber Co. v. Rannie, 59 Fla. 179, 52 So. 617; 12 Am.Jur.2d, Brokers, § 89; 5 Fla. Jur., Brokers, § 23. Any concealment from the principal of material facts known to the agent will forfeit the agent's right to compensation for his services. Skinner Manufacturing Company v. Douville, supra; Carter v. Owens, supra.
Moore admitted that he did not advise Mrs. Hershey of the Trailways lease.[1] But, the appellees contend he was under no duty to do such because her lot was encumbered by an existing lease which had approximately 19 months remaining on its term; that the existing lease provided it could only be terminated by a "sale or lease for a period of 25 years or more"; as the Trailways lease was only for a 20 year term, she could not terminate the existing lease. This contention is without merit. If Mrs. Hershey had been advised of the Trailways offer to lease [which was at a higher rental than she was then receiving] she could have done several things, assuming that this 20-year lease with a 10-year renewal would not meet the test of a 25-year lease or a lease to commence at the conclusion of the term of the existing lease; or negotiated a surrender of the existing lease; or awaited the expiration of the existing lease and then attempted to lease it to Trailways or another. We hold that it was incumbent upon the agent to disclose to his principal, Mrs. Hershey, the desire of Trailways to lease this property, which was a fact material to the transaction and should have been conveyed to her. Hegenmyer v. Marks, 37 Minn. 6, 32 N.W. 785; Holmes v. Cathcart, 88 Minn. 213, 92 N.W. 956, 60 L.R.A. 734; 3 Am.Jur. 2nd, Agency, § 200.
The principal error complained of by the appellant was the failure of the trial court to grant the motion for new trial. Error is also urged in the receiving of certain evidence and in the giving of certain instructions. We hold that it was error to permit evidence as to the true value of the property [Burnham City Lumber Company v. Rannie, supra; Cannell v. Smith, 142 Pa. 25, 21 A. 793, 12 L.R.A. 395; Raisch v. Cook, 306 Pa. 208, 159 A. 170], and we also find it was error for the trial judge to give the following instruction:
"If you find that the plaintiff did employ the defendants solely to find a purchaser for her property who would pay all cash for it, and at a price acceptable to the plaintiff, then your verdict must be for the defendant."
Therefore, we find it was error for the trial judge not to grant the motion for new trial, and the final judgment here under review *244 will be reversed and this cause returned to the trial court for further proceedings not inconsistent herewith.
Reversed and remanded with directions.
PEARSON, Judge (dissenting).
My dissent is based upon a somewhat different view of the issues involved in this case. It seems to me that the appellee, broker's contention is that the issue of whether he made a full disclosure of all of the material facts was presented to the jury and decided by them, and that therefore, the jury verdict should be sustained in this court as it was by the trial judge.
If this court finds that the evidence of a breach of the broker's duty to disclose to his principal a material fact, is proved beyond issue, then there remains nothing to be done in this case except to remand the cause for the entry of a judgment for the plaintiff and the assessment of damages.
There are, as I view this record, a great many conflicts in the testimony. My dissent is occasioned not by a disagreement upon the law which requires absolute fidelity by a broker to his principal, but rather, because I am of the opinion that the majority has not applied the proper principles of review to an appeal from a judgment based upon a jury verdict.
The majority opinion holds that it was reversible error for the trial court to give the instruction:
"If you find that the plaintiff did employ the defendants solely to find a purchaser for her property who would pay all cash for it, and at a price acceptable to the plaintiff, then your verdict must be for the defendant."
I think that the instruction quoted, when taken in conjunction with the other instructions given,[1] fairly states the issue that was presented by the evidence and tried by the parties. The court must in its instructions present every theory supported by the evidence when properly requested. Atlantic Greyhound Lines v. Lovett, 134 Fla. 505, 184 So. 133 (1938).
Once a determination was made that the employment of the appellee-broker was to secure a sale for cash at the highest obtainable price, then a determination that the undisclosed lease might have made possible a higher price, necessarily results in a holding that as a matter of law the broker has acted falsely. But one of the issues presented to the jury was the determination of the nature and terms of the broker's employment. It is true that the appellant testified that she employed the broker to procure a cash sale at the highest obtainable price. Upon the other hand, the appellee-broker testified that he was employed to find a purchaser for the property who would pay all cash and at a price acceptable to the appellant. The jury verdict affirmed the broker's version of his employment. The question then is whether the broker's failure to disclose the pending lease was a fact material to this employment. I think that it was not.
It seems both unjust and unreasonable to hold that a broker, who demonstrates to a prospective purchaser that the property is worth a price the seller is willing to accept, by showing the purchaser he can, over a long *245 term make money on the property, is false to his employer. The ultimate result of such a holding seems to require a broker to inform his principal of all of the purchasers plans and the means by which the purchaser intends to make a profit. The natural result of such action by the broker is to convince the seller that he ought not sell. I think that the majority holding overlooks the fact that the purchaser has already determined to sell the property and had agreed with the broker that he would sell the property if a cash price satisfactory to the seller could be obtained.
I think that the decision of the majority is contra to the holdings that appellate courts will not retry cases. Miami Shores Village v. Lingler, Fla.App. 1963, 157 So.2d 716; Holland Paving Co. v. Dann, Fla.App. 1964, 169 So.2d 849.
I would therefore affirm the judgment.
NOTES
[1] * * * * *
"Q Mr. Moore, in your dealings with Mrs. Hershey, did you ever tell her of your dealings with the Tamiami Trail Tours and Mr. Dick relative to the leasing of Lot 17, Block 78 to Trail Tours?
"A No, sir.
"Q You never said anything to her about that?
"A No, sir.
"Q Did you receive a commission from this transaction at the time of the closing?
"A I did."
* * * * * * *
[1] The jury was also instructed immediately after the instruction above quoted, as follows:

"If you find from the evidence in this case that the defendants, Mac D. Moore and The Keyes Company, were retained by the plaintiff to act as her agent in selling her property, then, as a matter of law, you are instructed that the defendants owed the plaintiff the highest fidelity and were bound to inform her fully of every important development affecting her interests and particularly not secretly or otherwise to take any step in which they would reap a profit additionally at her expense.
"A broker has imposed upon him during period of relationship with his principal the obligation to inform him with fairness, promptness, and completeness concerning all facts within his knowledge which are or may be material to the situation in connection with which he is employed."