WHITE, Judge.
Dave Deegan II appeals an adverse final .•judgment rendered in his action for a •broker’s commission in connection with the sale of certain real property of appellee, J. E. Whidden, who was the defendant below. The judgment was entered on a directed verdict for the defendant at the close of •plaintiff’s case.
In October 1957 the defendant listed with plaintiff his property consisting of extensive acreage at an asking price of $135.00 per acre on specified terms. The plaintiff immediately wrote to Dwight J. Thomson of ■Ohio advising him that the property, which ■adjoined Thomson’s existing Florida acreage, was for sale at the stated price but that it might be had for a little less. The plaintiff coincidentally informed the defendant that he had written the offer letter to Thomson. Receiving no response from Thomson, the plaintiff on December 5, 1957 mailed a follow-up letter, but again there was no response from Thomson. Plaintiff did not inform Whidden of the follow-up letter.
On December 9, 1957, the defendant sold his property direct to Earl D. Farr, a Charlotte County attorney, at a price of $100.00 per acre on terms similar to those as listed with the plaintiff. The contract of sale was expressly assignable. A $25,000.00 earnest money deposit was paid by check drawn on a trustee account of Earl D. Farr. On closing the transaction in February 1958, the deed was made to “Earl D. Farr, Trustee” who gave back a purchase money mortgage containing a covenant against a deficiency decree in the event of default and foreclosure. Four months thereafter Earl D. Farr conveyed the property to Dwight J. Thomson by warranty deed for a nominal consideration. Upon discovering the re-cordation of this deed and being refused a commission, the plaintiff brought suit against the defendant. During the interim following the sale the defendant did not inform the plaintiff that the property had been sold.
The plaintiff alleged in substance that through his letters he was the “initial and procuring cause” of the sale and that the defendant knew or should have known that Earl D. Farr was acting for Dwight J. Thomson in the purchase of the property. We here take parenthetical note of plaintiff’s comment in argument that the defendant was not charged with affirmative bad faith but rather “a lack of good faith” in making the described sale. The defendant’s answer admitted the listing of the property but denied all other material allegations of the complaint.
The only witnesses for the plaintiff were Earl D. Farr and the plaintiff himself. Their testimony was consistent with the foregoing factual recitation — with additional testimony by Earl D. Farr to the effect (1) that he had been and was then attorney for Dwight J. Thomson; (2) that over many years he had bought and sold much real property, often using “Trustee” after his name even when buying for himself and knowing the legal effect of the use of that term; that his purpose was not to disclose to the public all his personal investments; (3) that it was a customary local practice in big land transactions to include in purchase money mortgages eonvenants against personal judgments for deficiencies since the down payments were usually large; (4) that it was not unusual for such a contract to contain a provision making it assignable; (5) that he had told no one that he represented Thomson in the purchase of the Whidden property; that he had not told Whidden or his attorney anything which would suggest that he was representing any person other than himself.
Dwight J. Thomson was not called as a witness for the plaintiff, nor was he deposed. The defendant was not called under the adverse witness rule, nor was he deposed. It is conceivable that their versions might have shed further light on the transaction. As stated, however, plaintiff’s only witnesses were himself and Earl D. Farr, and we are limited to a consideration'of their testimony.
*764 There is room for suspicion that the plaintiff may have been wilfully dealt out of the subject transaction; but, while indicating that possibility, the trial court observed that such a suspicion was not in itself enough to subject the defendant to liability. The court then found plaintiff’s evidence insufficient as a matter of law to show directly or by reasonable and permissible inference that the plaintiff was the procuring cause of the sale, and further found the evidence insufficient to charge the defendant with knowledge that Earl D. Farr was acting for Dwight J. Thomson in the purchase of the property. The court accordingly concluded that the plaintiff had failed to make out a prima facie case. We are impelled to agree.
An owner’s knowledge that the purchaser of his property was a “dummy” acting for a prospect of the owner’s broker may subject the owner to liability. Cf. 46 A.L.R.2d 848, Secs. 13, 16 and cases therein cited. As to the effect of the owner’s lack of knowledge, the decisions are not entirely in accord; but it apparently continues to be the general rule that where the property is purchased by another person acting for the broker’s prospect or customer, the owner’s ignorance of that circumstance does not preclude liability if the broker otherwise demonstrates his entitlement to a commission. See 7 A.L.R. 87; 46 A.L.R.2d 881, Sec. 16(b). On the other hand, it is a logical corrollary to the general rule that the owner’s lack of knowledge of the party for whom the purchase was made would presage non-liability unless the broker sufficiently establishes that it was through his efforts that the sale was procured. See 46 A.L.R.2d 879, Sec. 16(a); Cf. Shuler v. Allen, Fla.1955, 76 So.2d 879, 883.
We shall discuss conjunctively these two prime aspects of plaintiff’s case, viz., the sufficiency of his evidence to show “lack of good faith” on the part of the defendant and the sufficiency of his evidence on the issue of procuring cause. This evokes a sort of negative resume of the evidence; or what the evidence fails to disclose.
There is no showing that the defendant knew of the representation of Thomson by Farr, nor do we think the evidence tended tO' establish constructive knowledge. We cannot subscribe to the view that the circumstances imposed upon the defendant the duty to ascertain whether Earl D. Farr was acting for himself or for another — or specifically for Dwight J. Thomson. There was no showing that the defendant had reason to believe that Thomson was interested in the property. Thomson’s complete silence indeed negated such belief. There was no evidence of any exchange of communications between Thomson and the plaintiff or between Thomson and the defendant, and a fortiori there was no evidence of any negotiations between them' although a considerable time had elapsed. Thus the imputation of lack of good faith remained essentially conjectural despite defendant’s failure to inform plaintiff that he had sold the property. These observations also point up the even more decisive weakness of the plaintiff’s case, — the insufficiency of the evidence to support the hypothesis that plaintiff’s two unanswered letters were the procuring cause of the sale. Cf. Wiggins v. Wilson, Fla.1908, 55 Fla. 345, 45 So. 1011.
In Shuler v. Allen, Fla.1955, 76 So.2d 879, the Supreme Court of Florida reversed a judgment for a broker who had, with the owner’s knowledge, conducted actual but unsuccessful negotiations with the parties who some sixteen months later purchased direct from the owner. Upon the break in the negotiations between broker and purchasers, the latter indicated that they might again be interested after they sold a business in another state. The Supreme Court held that after the break in the negotiations there were no “continuous negotiations” conducted by the broker with the owner’s knowledge and therefore the broker could not recover, even though the ultimate sale may have been aided to some extent by the broker’s previous efforts. In the instant case, although the time interval was shorter, it is notable by contrast that the plaintiff did *765 not conduct any negotiations, as such, with Thomson. The court said in the Shuler case, supra:
“The broker in this case is not protected by the rule set forth in Taylor v. Dorsey, 155 Fla. 305, 19 So.2d 876, to the effect that if the broker has brought the parties together and the sale is effected as a result of continuous negotiations inaugurated by him, he will be nevertheless entitled to his commission even though the sale eventually consummated is on terms and at a price different from those on the original listing or under the original employment. Continuous negotiations, as used in this decision, * * * means continuous negotiations between the seller and the prospective purchaser conducted by the broker. It is a rule that is fair to both. The requirement of continuous negotiations is not complied with when the broker conducts his negotiations with the purchaser alone unless the seller participates m such negotiations or at least has knowledge of the fact that such negotiations are going on. To establish any other rule would result in manifest injustice and subj ect the owner of real estate to continuous and unwarranted liability and result in oppression. * * * (Emphasis supplied)
Plaintiff’s evidence materially distinguishes his case from Willis v. Clark, Fla.App.1961, 135 So.2d 260 cited in support of this appeal. In that case the plaintiff broker had performed by producing a qualified purchaser, but the defendant owner wrongfully refused to convey. The defendant thereafter sold the property through another agent representing the purchaser who previously had been produced by the plaintiff, but the defendant did not know that the subsequent agent was acting for the same purchaser. We held that defendant’s lack of knowledge of the subsequent agency was-immaterial inasmuch as the plaintiff had already become entitled to- a commission when he produced the qualified purchaser from' whom he had accepted an earnest money deposit. In so holding we quoted Hutchins. & Co. v. Sherman, 1921, 82 Fla. 167, 89 So. 430:
“ ‘The authorities uniformly hold to the effect that, where a broker procures a customer willing, ready, and able to purchase property offered for sale according to the terms of the offer, and the transaction is defeated on account * * * of the principal, the broker is entitled to his commission, although the transaction is not consummated.’ ”
Mindful of the rule that a directed verdict should be granted with caution, we-nevertheless find no basis for disturbing-the judgment here reviewed.
Affirmed.
SHANNON, C. J., and SMITH, J., concur.