ALLEN, Chief Judge.
Walther S. Hardin Realty Co., Inc., plaintiff below,, appeals from a summary judgment entered in favor of the defendant-appellees, Louis J. Barolo and Joanna T. Barolo, his wife.
The plaintiff realty company sued the Barolos, sellers of certain property owned by them in Sarasota, for a real estate commission.
In 1960, Mr. Barolo orally agreed to list these properties exclusively for sale with the appellant real estate company and this company began negotiations with the eventual purchaser, Mr. Helms. Sometime before the summer of 1962 Hardin obtained an oral offer from Helms in the amount of $60,000. Mr. Barolo flatly rejected this offer. In the latter part of the summer of 1962, a representative of Hardin, Mr. Lowery, went to Mr. Barolo’s home with Helms’ offer to buy the property for $90,-000. Lowery, upon deposition, testified that Barolo declined this offer and said he would not take less than $120,000, but would give easy terms. Lowery testified that he discussed the terrtis of a possible agreement with Barolo. Lowery further testified that he directed Mr. McFaddin, another Hardin representative, to prepare and send a contract for $120,000 to- Mr. Helms. The prepared contract was apparently sent. Barolo notified Lowery about this time that he was going to open the listing to other brokers.
Apparently, Hardin was working to get Helms to sign the contract for $120,000 *335 when another brokerage firm intervened and sold the property to Helms for $122,500 in April of 1963.
Appellant contends that it was error to grant summary judgment because it had a right to a jury trial on whether it was the procuring cause of the sale, since this is generally a factual issue. See: Chapman v. Tinson, Fla.App.1962, 137 So.2d 605.
Florida adheres to the rule that if a real estate broker is the procuring cause of his principal’s property, he will not be deprived a commission if, at the time of the sale, the principal had knowledge of the instrumentality of the broker in procuring the customer even though the broker’s agency was not exclusive. See: Shuler v. Allen, Fla.1955, 76 So.2d 879; Deegan v. Whidden, Fla.App.1963, 148 So.2d 762. Also Cf. 142 A.L.R. 275.
Stated differently, the rule is if a broker has brought t.he parties together and the sale is effected as a result of continuous negotiations inaugurated by him, he will nevertheless be entitled to his commission even though the sale was eventually consummated on different terms and at a different price. Shuler v. Allen, Fla.App. 1955, 76 So.2d 879. The rule should not fail to operate merely because the sale was effected through another broker and not by the seller and buyer directly. 12 Am. Jur.2d, Brokers § 235 (1964); Cf. Deegan v. Whidden, supra.
The commission is conditioned upon the seller having knowledge of the broker’s activities so that the owner will not be prejudiced by being required to pay a commission to one broker upon a sale to' a customer actually procured through the efforts of another broker. 12 Am.Jur.2d § 235, supra.
The rule of knowledge of continuing negotiations is explained in Shuler v. Allen, supra:
“ * * * Continuous negotiations, as used in this decision, and as referred to in many others, means continuous negotiations between the seller and the prospective purchaser conducted by the broker. It is a rule that is fair to both. The requirement of continuous negotiations is not complied with when the broker conducts his negotiations with the purchaser alone unless the seller participates in such negotiations or at least has knowledge of the fact that such negotiations are going on. * * * ” (emphasis added)
Lowery’s deposition demonstrates that he spoke to Barolo several times after the listing became open — after the summer of 1962. Lowery’s deposition also implies that Barolo knew that Hardin was going to ask Helms to buy the property for $120,000 because of Lowery’s alleged conference with Barolo the night Barolo rejected Helms’ offer of $90,000. Barolo’s deposition shows that he knew that Helms was Hardin’s customer at the time the sale was consummated through Blaylock, the representative of the other brokerage firm.
Barolo, in one part of his deposition, states that after he rejected Helms’ offer of $90,000, he had no further conversation with Lowery or anyone else connected with Hardin Realty Co.
Admittedly, the showing of Barolo’s knowledge of Hardin’s continuous negotiations with Helms is weak. Barolo brings this showing of his knowledge of these negotiations into issue by his denial of any further conversations with anyone from Hardin Realty Co.
We must test the granting of a summary judgment upon the above facts by Judge White’s articulate language in Nance v. Ball, Fla.App.1961, 134 So.2d 35, where he examined the implementation of the summary judgment device in just such a situation :
“The determinative question on this appeal is whether or not the summary proceedings sufficiently indicated that the co-defendants knew or should have known of a tendency on the part of *336 Linzy Ball to assault other patrons while engaged in competitive bowling. This is an issue of material fact. If the proceedings failed to set forth any fact or circumstance from which such knowledge appeared or was inferable, the motion for summary judgment was correctly granted; otherwise the judgment was erroneous. Pierson v. Seale, Fla.App. 1961, 128 So.2d 887.
“Some cases are clearly disposable by summary judgment. There are also marginal cases posing colorable issues which the trial court fnay consider so weakly supported as to indicate the futility of a full hearing on the merits. In such a case, where adherence to the rule of caution results in a denial of summary judgment, the court may feel that there has been an unjustified extension of fruitless litigation. Our own experience attests an occasional impulse to amputate at once rather than face the prospect of surgery by painful stages, but herein lies the occasional margin of error.
“The trial court may be convinced that a doubtful or marginal case would be practically unprovable, and most frequently that could be the net result. We do not apprehend, however, that the denial of summary judgment in such cases would likely result in ultimate miscarriage of justice. There are other stages along the procedural panorama where the court may terminate a case or control its direction, viz., (1) on motion for directed verdict at the conclusion of plaintiff’s case, (2) on motion for directed verdict at the conclusion of all the evidence, (3) on motion for a new trial, and (4) on motion for judgment notwithstanding the verdict. There remains also the possibility that further proceedings might bring out added factors which could change the complexion of the case.”
Guided by this decision, we note that there is some evidence of Barolo’s knowledge of the negotiations carried on between Hardin and Helms that, according to McFaddin, Hardin’s representative, occurred “right straight through until he [Helms] finally bought the property.” This evidence precluded disposition of this dispute by summary judgment and materially affected the use of the rule of procuring cause.
This discussion has neither foreclosed the disposition of this contest by directed verdict or by other motions that can terminate the cause at trial, nor reduced the number of issues to be tried.
Summary judgment is reversed and the cause remanded for trial.
PIERCE and KANNER, (Ret.), JJ., concur.