371 So.2d 178 (1979)
ST. JOE PAPER COMPANY, Appellant,
v.
STATE of Florida DEPARTMENT OF ENVIRONMENTAL REGULATION, Appellee.
No. KK-88.
District Court of Appeal of Florida, First District.
May 15, 1979.
*179 Lynn C. Higby and C. Richard Watson, of Isler, Higby, Brown, Smoak & Watson, Panama City, for appellant.
Louis F. Hubener, Tallahassee, for appellee.
McCORD, Chief Judge.
Appellant, St. Joe Paper Company (St. Joe), appeals the assessment against it of $70,100 liquidated damages for 701 days of noncompliance with Department of Environmental Regulation Rules and Regulations. We affirm.
This appeal involves an interpretation of a Stipulation for Consent Order entered into by the parties, and approved by the trial court, in an effort to give St. Joe Paper Company a fair opportunity to comply with certain new environmental regulations enacted by the Department. The new regulation restricted the amount of "fly ash," a by-product of the processing of pulpwood into paper, which could be allowed to escape into the air. The regulation went into effect on July 1, 1975. Because of the physical impossibility of St. Joe complying by July 1, 1975, St. Joe and the Department entered into the Stipulation which has led to this appeal.
The Stipulation provides in pertinent part:
"A. Compliance by St. Joe Paper Company with Federal and State air emission standards for the emission of bark particulates for its Number 4 power boiler shall be extended from July 1, 1975 until January 1, 1976.
1. Thereafter, St. Joe Paper Company will meet all Florida rules and regulations for the emission of bark particulates from said Number 4 power boiler.
* * * * * *
B. After pollution control equipment designed to bring Power Boiler Number 4 into compliance with applicable standards is connected and operable, the St. Joe Paper Company may activate Power Boilers Numbers 1 and 2 upon the following conditions:
1. Power Boilers Numbers 1 and 2 will meet state air standards for the emission of particulates on or before July 1, 1976.
2. During the interim period between completion of the pollution abatement modifications of Power Boiler Number 4 and the date specified in 1. above, the combined emissions of particulates from Power Boilers Numbers 1 and 2 shall not exceed a total of 4,300 pounds per day.
3. During the interim period between the completion of the pollution abatement modification of Power Boiler Number 4 and the date specified in 1. above, the combined emissions of particulates from Numbers 1, 2, and 4 shall not exceed a total of 5600 pounds per day.
* * * * * *
C. The Department of Environmental Regulation agrees to waive its right to seek the imposition of civil or criminal fines or penalties against the St. Joe Paper Company so long as the terms and conditions of this agreement are in effect; *180 however, nothing in this agreement shall prevent the Department from requesting a Court of appropriate jurisdiction to utilize its injunctive powers to prevent any damage to the health or welfare of the people of the State of Florida.
D... . since said damage is too prospective to determine exactly at this time, it is agreed upon that the following amounts shall be awarded to the Department of Environmental Regulation and against the St. Joe Paper Company as liquidated damages each day the St. Joe Paper Company operates the portions of its plant described herein in a manner not in compliance with Florida rules and regulations after the dates for compliance stated in this agreement, to wit:
1. The sum of $1,000 per day for the first 90 days.
2. $2,000 per day for the next 60 days.
G. Should any event beyond the control of St. Joe Paper Company (force majeure) occur, St. Joe Paper Company may partially mitigate the liquidated damages stated hereinabove by acting in the following manner:
1. The St. Joe Paper Company shall prove the occurrence of the force majeure event and the time delayed thereby to the Court after notice to all parties and a full hearing thereon. The notice of said hearing must be mailed prior to the expiration of the compliance date.
* * * * * *
3. Should the Court find that a force majeure event occurred, it shall also be requested to find the reasonable amount of days thereof and to extend the compliance date under this agreement accordingly.
4. If the Court should find the existence of a force majeure event, St. Joe Paper Company agrees to pay the sum of $100 per day for each day it failed to operate in compliance with Florida Department of Environmental Regulation rules and regulations for the amount of days the compliance schedule is increased past the original agreed upon date as a result of said event.
5. A force majeure is defined for the purposes of this agreement as:
`Acts of God or the public enemy; expropriation or confiscation of facilities; compliance with any order of any governmental authority; shortage or unavailability of materials, equipment, labor or technical personnel; ... epidemics or breakdowns; riots, strikes, slowdowns and walkouts, blockouts, or other industrial disturbances, whether direct or indirect; or any cause, whether or not of the same class or kind as those specifically named above, not within the reasonable control of the company.'" (Emphasis supplied)
St. Joe installed a dry scrubber fly ash collector in December, 1975, in its effort to comply with the new regulation. However, the new scrubber never worked properly because of an error in design, according to St. Joe. In April, 1976, St. Joe sought an extension of compliance date which the Department refused in July, 1976. In accordance with paragraph G of the Stipulation, St. Joe then filed a motion requesting the court to make a determination that a "force majeure" had occurred and to extend the compliance date. After an evidentiary hearing, the trial court ruled that a force majeure had occurred and thereby limited St. Joe's liability to $100 for each day of noncompliance after January 1, 1976, pursuant to paragraph G4 of the Stipulation. The court extended the compliance date to July 15, 1978. Additional evidence was heard for the purpose of determining how many days St. Joe was not in compliance and the trial court found that St. Joe was in noncompliance for 701 days between January 1, 1976, and February 28, 1978, and assessed liquidated damages at $70,100.
St. Joe concedes that it was not in compliance for 102 days of the period in question and contends that damages of no more than $10,200 should be assessed against it. St. Joe argues that the Stipulation is ambiguous, and the trial court has misinterpreted the ambiguities contained therein. St. Joe argues that Paragraph G4 of the Stipulation should be read to mean that when the *181 trial court extends the compliance date, St. Joe is liable for the $100 a day penalty only if it exceeds the 5,600 pounds per day of combined emissions from Boilers 1, 2 and 4, as allowed by paragraph B. (The evidence before the trial court indicated that Boilers 1 and 2 had been operating during the extended period of time.) St. Joe contends that when the trial court extended compliance of Boiler 4 until July 15, 1978, compliance of Boilers 1 and 2 was automatically extended for six months beyond that date (until January 15, 1979) since the original purpose behind having the compliance date of Boilers 1 and 2 six months after the compliance date of Boiler 4 was to allow St. Joe time to establish a scrubber system that would work before installing the system in all the boilers.
We disagree with St. Joe's interpretation of the Stipulation. We do not find the Stipulation ambiguous. It does not provide that if a force majeure is declared by the court, Boiler 4 could be operated after January 1, 1976, without liability if it were not in compliance with the regulations. The Stipulation merely provides for a reduced penalty for St. Joe if a force majeure occurred. Were it not for the Stipulation, St. Joe could not have operated without suffering full penalty for noncompliance under § 403.141, Florida Statutes, in an amount up to $10,000 per day.
Paragraph B is not applicable. It comes into effect after the equipment installed in Boiler 4 is operable  has been brought into compliance. Thus, St. Joe's compliance with the emission allowance of paragraph B is irrelevant.
The judgment of the trial court comes to us clothed with a presumption of correctness. White v. White, 306 So.2d 608 (Fla. 1 DCA 1975), and Merritt v. Williams, 295 So.2d 310 (Fla. 1 DCA 1974). We find no error in the trial court's construction of the Stipulation and its application of the facts thereto.
AFFIRMED.
ERVIN and MELVIN, JJ., concur.