415 So.2d 774 (1982)
Gerald L. EHRINGER and Beatriz Ehringer, His Wife, Appellants,
v.
BROOKFIELD AND ASSOCIATES, INC., Etc., Appellee.
No. 81-133.
District Court of Appeal of Florida, Fifth District.
May 26, 1982.
Rehearing Denied June 24, 1982.
G. Larry Sims of Black, Crotty, Sims & Hubka, Daytona Beach, for appellants.
J. Lester Kaney of Cobb & Cole, P.A., Daytona Beach, for appellee.
*775 PER CURIAM.
The Ehringers (the owners) appeal from a judgment entered after a non-jury trial, which concluded that Brookfield and Associates, Inc. was entitled to a commission on the sale of the LaMacarena Apartments to D'Amico and Friskey. We reverse because we conclude that Brookfield failed to establish any basis upon which a commission could be awarded.
The Ehringers owned the apartments and employed Pam Dunham as their resident apartment manager. While working for the Ehringers, Pam obtained a real estate license, and she associated with Brookfield. Pam asked the Ehringers for an exclusive listing on the apartments. They told her there were several open listings on the property, but if she sold the apartments, she could earn a commission. Pam did not put up any signs or advertise the property. At this point D'Amico and Friskey (partners) came to Daytona Beach to look for real estate investments. They noticed the LaMacarena Apartments and decided to make further inquiry about them. D'Amico telephoned the apartments seeking to speak with the owner, and asked if the project was for sale.
Pam received this call. She told D'Amico he need not call the Ehringers because she could show him the apartments. She then called Dr. Ehringer and obtained information about taxes, mortgages, etc., that a potential buyer would want to know. She did not tell him D'Amico's name, nor the circumstances under which she had received D'Amico's call. Pam then called a friend at Brookfield, Dorothy, who agreed to help her handle the sale. When D'Amico arrived to see the project the next day, Pam and Dorothy gave him their business cards, and conducted the apartment showing as brokers. As quickly as he could politely extricate himself, D'Amico left.
At about the same time, Dorothy presented the Ehringers with a written commission agreement on behalf of Brookfield, which provided that the Ehringers would pay a commission if D'Amico bought the apartments. Neither she nor Pam explained to the Ehringers who D'Amico was, nor how he came to know about the apartments. Friskey thereafter contacted Dr. Ehringer directly, and said he had not been sent by a broker. Ehringer then directed Pam, as his manager, to show Friskey the apartments. She conducted this showing as a non-broker. Friskey eventually bought the apartments for his partnership.
At trial the Ehringers argued that Brookfield was not entitled to a commission because it was not the "procuring cause" of the sale. See National Airlines, Inc. v. Oscar E. Dooley & Associates, 160 So.2d 53 (Fla. 3d DCA 1964). The trial court rejected this argument, finding that the key fact was "that contact between the potential buyer and the broker was in fact made when Mr. D'Amico presented himself at the property in question and was greeted by Pam Dunham and Dottie Huffman, two real estate associates of the plaintiff." We disagree that this point of contact was determinative.
We agree with the Ehringers that Brookfield, acting through Pam and Dorothy, was not the "procuring cause" of the sale of the apartments to the D'Amico-Friskey partnership.[1] The purchasers found these apartments themselves and telephoned the apartment office to reach the owner. They made their first appointment to see the project with a person who they thought was the owner's agent or manager. As soon as they realized Pam was trying to interpose herself as a broker in the transaction, they stopped dealing with her.
A broker who is the "procuring cause" of a sale of real property is one who initiates negotiations by doing some affirmative act to bring buyer and seller together[2] *776 such as placing signs on the property, promoting calls from prospective buyers, or showing the property to prospective purchasers. Here the record shows all appellee did was, through Pam, answer the apartment office telephone at least partially in her capacity as manager of the project. No case in Florida holds that is sufficient to constitute being a "procuring cause" of a real estate sale.
Even if, as the dissent argues, there were minimal facts or inferences in this record to characterize appellee as a "procuring cause" (which we concede only for the purpose of argument) the record also establishes that Pam (Brookfield's agent) violated her fiduciary duty owed to the Ehringers, in trying to act as the real estate broker in this transaction, to further her own interest rather than theirs. Pam did not first clearly obtain the Ehringers' permission or consent to act as a broker, nor did she disclose to them that she had a conflict and was going to act against their interest.
Where employees or agents have so acted, contrary to the interest of their principals, the courts do not countenance their keeping the benefit of their breach of duty.[3] Here the record shows Pam did not tell the Ehringers the name of her "prospect" nor the circumstances under which she received the call. Her associate (Dorothy) presented the commission contract to the Ehringers without any disclosure having been made to them as to any of the facts relating to Pam's conflict of interest. Since Pam was "wearing two hats" in this transaction, if she was going to take off her employers' and wear her own, she (at a minimum) owed them a duty to disclose her conflict. The fact that they earlier said she could act as a broker for the apartments did not clearly cover the transaction as it unfolded in this case.
Actually, Pam and Dorothy owed the Ehringers an additional duty as real estate brokers. The relationship of broker-to-client is a professional one, requiring the avoidance of a conflict of interest, and when it occurs, full disclosure and the sacrifice of self-interest. Before the execution of a brokerage agreement there must be a full, fair, and open disclosure by the broker or its agents to the prospective client of all material matters.[4] Pam's status as to persons coming into contact with her through her apartment manager capacity and her entitlement to a commission for a sale should have been clearly settled by a prior agreement. Absent such an understanding, the circumstances under which D'Amico reached her should have been disclosed to the Ehringers before they signed the contract. That duty not having been met, the brokerage contract is (at a minimum) voidable by the Ehringers.
Accordingly, the judgment is
REVERSED.
SHARP and COWART, JJ., concur.
DAUKSCH, C.J., dissents with opinion.
DAUKSCH, Chief Judge, dissenting:
I respectfully dissent.
In my opinion this court cannot reverse the judgment of the trial court because the findings of the trial judge come to us presumed to be correct and we cannot substitute our judgment for that of the trial court. St. Joe Paper Company v. State Department of Environmental Regulation, 371 So.2d 178 (Fla. 1st DCA 1979).
There is substantial competent evidence to support the findings of the trial judge that the appellants permitted, and according to some testimony, requested, the appellee's agent to serve as their real estate *777 agent in procuring a buyer for the property. Since the agent was also the manager of the apartment complex, she was in an excellent position to assist in the sale of the property. This situation was ideal for both the appellants and the appellee; particularly for appellants because they had their own manager/real estate agent right there on the property. She was trained and qualified to do what only registered real estate agents are trained to do (to bring the buyer and seller together to execute a contract). It was with the seller's knowledge and consent, then, that the manager agent filled a dual role. When the buyer contacted the manager/agent to begin negotiations for the purchase the die was cast. It is not important whether the buyer knew the manager was also the agent because it is the seller who is obligated to the agent and the buyer incurs no obligation when seeking properties for purchase.
I would affirm the judgment because it is based upon substantial competent evidence.
NOTES
[1] See Fearick v. Smugglers Cove, Inc., 379 So.2d 400 (Fla. 2d DCA 1980); Dixson v. Kattel, 311 So.2d 827 (Fla. 3d DCA 1975); Walter S. Hardin Realty Co., Inc. v. Barolo, 198 So.2d 334 (Fla. 2d DCA 1966); National Airlines, Inc. v. Oscar E. Dooley Associates, Inc., 160 So.2d 53 (Fla. 3d DCA 1964).
[2] See Banks Real Estate Corp. v. Gordon, 353 So.2d 859 (Fla. 3d DCA 1977).
[3] Van Woy v. Willis, 153 Fla. 189, 14 So.2d 185 (1943); Skinner Mfg. Co. v. Douville, 57 Fla. 180, 49 So. 125 (1909); Hershey v. Keyes Co., 209 So.2d 240 (Fla. 3d DCA), cert. denied, 214 So.2d 623 (Fla. 1968).
[4] A material matter is any matter which would reasonably or likely affect or influence the conduct of a reasonable person in entering or declining to enter into the proposed brokerage agreement.