579 So.2d 171 (1991)
Milton J. WALLACE, As Trustee, Appellant,
v.
J. Brailey ODHAM, Appellee.
Nos. 89-2356, 90-0938.
District Court of Appeal of Florida, Fifth District.
April 11, 1991.
Rehearing Denied May 21, 1991.
Douglas C. Spears of Smathers, Pleus & Adams, Orlando, and Richard L. Allen of Wallace, Engels, Pertnoy, Solowsky & Allen, P.A., Miami, for appellant.
Charles Evans Davis, Orlando, for appellee.
PETERSON, Judge.
Milton J. Wallace appeals an adverse judgment notwithstanding the verdict and an order in the alternative granting J. Brailey Odham a new trial. We vacate both orders of the trial court, reinstate the jury verdict, and remand for judgment to be entered in favor of Milton J. Wallace, as trustee.
*172 The negotiations for a real estate listing agreement between Wallace, owner of a 115-acre parcel of vacant land, and Odham, a real estate broker, were prolonged and complicated, but it is sufficient to indicate that they entered into a written "exclusive right of sale listing agreement" on January 23, 1987. The agreement provided that Odham was to perform rezoning and utility acquisition services in addition to the normal duty of finding a purchaser for the $3.8 million list price. Wallace agreed to pay a commission of ten percent of the gross sales price for Odham's services at the time a sales transaction was closed. The agreement provided that, in exchange for his additional services, Odham would receive a higher than normal percentage of the commission in the event of a co-broker sale.
Odham admirably performed the services, it appears, and ultimately the Orange County School Board met on June 10, 1988, to consider entering a purchase agreement for a portion of the lands. Prior to the day of the meeting, and as a result of a dispute between Wallace and Odham over the manner in which the gross sales price was to be computed (and therefore directly affecting Odham's commission), Wallace had taken over negotiations with the school board attorney which previously had been conducted by Odham. The basic difference in the computation of the sale price was that Odham wanted the gross sales price to include Wallace's pro rata share of the estimated cost of improvements such as roads, a retention pond, sewer lines, and other government requirements now commonly referred to as "infrastructure." Odham had structured the sale so that estimated improvement costs would be "shared" by Wallace pro rata, according to the proportion between the unsold and the sold land, and deducted from the sales proceeds. Wallace wanted the gross sale price to reflect the reduced price after deducting the estimated costs of infrastructure and a $100,000 price reduction Wallace gave for potential cost overruns of the infrastructure. Wallace made the reduction because he wished to have no part in or liability with respect to the construction of the improvements. While the infrastructure would be of indirect benefit to Wallace's unsold portion of the original 115 acres in that it enhanced the value of the unsold portion, at trial the school board attorney testified essentially that the improvements were necessary to the school board even if Wallace's remaining land did not exist. He testified that he would have to review the improvements to determine whether the board could have lived without one or two of them.
Additionally, a conflict had arisen between Odham and Wallace soon after the listing agreement was entered because of Odham's persistent demand that the agreement be extended for four years so that he would realize the commissions for the sale of that portion of the 115 acres that was not purchased by the school board. In fact, during negotiations for the original listing agreement, Odham had sought to list the property for a term longer than the 18-month term agreed upon by the parties.
Having learned that Wallace and the school board's attorney revised the proposed sale contract so that it reflected Wallace's desired reductions, at the school board meeting held to consider approval of the contract, Odham appeared in his own behalf and made statements of the following import:
(1) That the form of the contract as structured by Wallace reduced Odham's commission by $69,000;
(2) That Wallace was transferring his originally proposed cost of the infrastructure to the school board;
(3) That Wallace was going to make $790,000 profit on the deal;
(4) That Wallace would defer tax payments to "Uncle Sam of 230-some thousand dollars" at a rate of thirty-three percent.
(5) That "I would not be a party to that contract because it has the effect of deferring and if he doesn't sell the other part for years, of avoiding the payment of that tax that's due on the sale now, in addition to my commission problem."
(6) That the contract should reflect that Wallace was receiving additional consideration *173 "as a dollar value [for the infrastructure costs] or [the school board] should destroy the sale and condemn the property and I won't get a dime."
(7) That he, Odham, was not a liar and that he would not be "a part of being a liar" and he would not be "a part of it."
(8) That Odham was not opposed to structuring an agreement to avoid taxes or defer taxes if it was "legitimate."
(9) That in his opinion the school board could "be in trouble as a public body" if the contract is executed "because it avoids taxes," and that they "shouldn't be a part of that," and that he was "not going to be a part of that."
After assurance by the school board attorney that the board would not be entering the contract "illegally," Wallace's desired version of the form of contract was executed, and the transaction closed immediately after the meeting. At trial, an issue arose as to when Wallace learned about Odham's statements to the school board since Wallace was not present at the meeting. Wallace contended that he learned about it after the contract with the school board was executed.
In June 1988, Wallace filed his complaint for a declaratory judgment to determine whether the 10-percent commission should be based on the sale price or on the sale price plus his share of the estimated cost of the infrastructure improvements. He added to the complaint a count for breach of fiduciary duty alleging that Odham breached his duty through his remarks at the board meeting, and requested the court to rescind the listing contract and declare that Odham was not entitled to a commission for the sale. He also added counts for breach of contract, alleging that Odham tried to hinder the sale and to extort a higher commission, and for tortious interference with business relations. Finally, he alleged that Odham's comments to the board constituted an abandonment of the listing agreement, asked the court to rescind the listing agreement, and requested the court to declare that Odham was not entitled to a commission.
Odham answered and counterclaimed. He alleged that the consideration for the sale was $2,168,855 which included the estimated cost of improvements to the school board property that benefited Wallace's remaining property and demanded judgment for commissions in the amount of $216,885. He also alleged that he performed extensive and valuable services including: rezoning and planning, and redesigning and obtaining approval for a use plan that saved five acres from conservation status. He alleged that these services were performed pursuant to Wallace's oral agreement to extend the listing for four years. Wallace answered the counterclaim and alleged as affirmative defenses, among others, estoppel, abandonment, and breach of fiduciary duty.
The jury returned special verdicts finding for Wallace on his claims for abandonment and breach of a fiduciary relationship. The trial court entered judgment against Wallace notwithstanding the verdict, finding that:
1. Odham had fully performed under the listing agreement.
2. Odham's commission should be based on the price paid by the school board.
3. The value of the unsold land was increased by the total investment in the infrastructure.
4. Wallace extended the term of the listing agreement for the unsold lands, orally and in writing.
5. Odham was entitled to ten percent of the value of the unsold land.
The court also granted Odham's motion for new trial in the event that this court reversed the trial court's judgment N.O.V. Wallace timely appealed.
The trial court's order granting the motion for judgment N.O.V. determined as a matter of law that Odham's statements at the school board meeting did not constitute an abandonment of the listing contract since Odham had fully performed his obligations under the listing contract. In reaching that conclusion, the trial court apparently also relied on its determination that Odham rightfully addressed the school board to protect his commission against *174 Wallace's efforts to have the school board enter Wallace's version of the proposed contract.
We must reverse the judgment N.O.V. since the record fails to support the trial court's justifications for setting aside the verdict. Orders granting motions for judgments notwithstanding the verdict are viewed as holding that one side of the case is without probative evidence. United Farm Agency of Fla., Inc. v. DKLS, Inc., 560 So.2d 1212 (Fla. 3d DCA 1990). The movant "admits all material facts as attested by his adversary and also admits all inferences of fact favorable to the adversary that reasonably might be drawn from the evidence as a whole." Id. at 1213.

Abandonment of Contract
The jury was charged with determining whether Odham abandoned his rights under the listing agreement by his remarks before the school board. The jury's finding of abandonment was not reduced to judgment because the trial court held that there was insufficient evidence to establish abandonment by Odham and that he had fully performed under the contract prior to the time he made his comments to the school board. We disagree with the trial court. The record reflects that Odham's statements before the school board indicated he did not wish to be a part of the transaction reflected by the contract drafted by Wallace and could be interpreted by the jury as an abandonment. It therefore becomes critical to determine just when Odham's right to the commission vested.
The listing agreement indicated that Wallace granted to Odham the right to sell the listed property under terms acceptable to Wallace, and Odham was to use his best efforts to sell the property. The listing price was "$3,800,000 or such other lesser sum acceptable to Wallace ...," and the commission would be earned at the time of the closing of a sale. This last provision was repeated in paragraph eight of the agreement by the terms: "No commission will be deemed earned under the Listing Agreement unless a closing takes place in accordance with the terms of an agreed contract." Clearly, the earliest that a sale could take place was at closing. Further, a sale could not have taken place until a contract for sale had been executed by the school board and Wallace, evidencing the latter's finding that the terms, including the price, were acceptable, a requirement under the terms of the listing agreement. Odham's statements were made prior to the school board having signed any form of contract for sale and therefore prior to a sale. Since no sale had occurred, the listing contract required Odham to continue to use his best efforts to sell the property. Odham's agreement with Wallace is recognized under Florida law as a "right to sell" listing as distinguished from a "right to find or procure a purchaser" listing. The former requires the broker not only to find a purchaser but actually to effect the sale or procure a binding contract of purchase. Leon Realty, Inc. v. Hough, 310 So.2d 767 (Fla. 1st DCA 1975), cert. denied, 324 So.2d 86 (Fla. 1975). Therefore, under Leon Realty, Odham's duties pursuant to the listing agreement were to be performed continuously and beyond the time the school board became seriously interested in the property. The very earliest time that his commission could have been earned was when both buyer and seller had signed the purchase agreement. This had not been done when Odham delivered his speech to the school board, and Odham had not fully performed his obligations. Thus, the jury was justified in finding that he abandoned his listing agreement with Wallace before the school board contracted to purchase the property.

Breach of Fiduciary Duty
Odham steadfastly maintains that his only purpose in addressing the school board at its June 10, 1988, meeting was to protect his commission. Unquestionably, Odham was entitled to protect his commission and to address the school board. However, while doing so, he had the primary obligation to exercise his fiduciary duty to his principal. Florida courts elevate the level of duty of a broker to that of an attorney or banker in that the broker's relation to the public exacts the highest *175 degree of trust and confidence. Young v. Field, 548 So.2d 784 (Fla. 4th DCA 1989).
A real estate broker is an agent of his principal in every sense, and when the relationship is undertaken, a fiduciary relationship is created, and it is the duty of the broker to remain loyal to the interests of his principal during the continuation of his agency.
Hershey v. Keyes Co., 209 So.2d 240, 242 (Fla. 3d DCA 1968), cert. denied, 214 So.2d 623 (Fla. 1968). Odham contends that, even if he breached his duty to Wallace, Wallace suffered no loss thereby and that, therefore, he is entitled to a commission.
The reported cases are not totally dispositive of whether a broker who breaches his fiduciary duty to his principal is entitled to his commission when the principal suffers no loss.
Breach of a fiduciary duty has been held to be a bar to the entitlement of a commission when the breach is failure to disclose to the principal any material fact or circumstance which might be influential in the conduct of the transaction. Id.; Hershey v. Keyes Co., supra. In Keyes, the listing broker was denied a commission for failure to disclose the existence of a lease he negotiated for the benefit of the potential buyer after receiving a listing from the seller. The broker argued that the seller received a price for the property equal to or in excess of its value and that, therefore, no duty existed to disclose the lease agreement that was to begin at the time the sale was consummated. The court disagreed, indicating that the concealment required forfeiture of the broker's compensation. In Ehringer v. Brookfield and Associates, Inc., 415 So.2d 774 (Fla. 5th DCA 1982), this court approved the denial of a broker's commission where an agent acted contrary to the interest of the principal. In Ehringer, a broker failed to disclose to the sellers that the buyers had first contacted her in her capacity as employee of the sellers and she had attempted to turn the contact into a more profitable brokerage transaction. The employer had not suffered any damage in the transaction except for the potential loss of a portion of the sales price for the broker's commission.
The instant case does not involve the failure of a broker to disclose a material fact to his principal, a breach of a fiduciary duty that would bar a commission. We do agree with the results attained by the jury verdict, however, because Odham's comments before the board constituted such an egregious breach of the fiduciary relationship and duty to remain loyal to the interests of his principal that the commission should be forfeited. While Odham's intent may have been to protect his commission, it is irrefutable that he urged the school board to abandon the purchase from his principal and to acquire the property by condemnation. It is possible that only the presence of, and the legal opinion rendered by, the school board counsel following Odham's inexcusable comments saved the sale.
It is unfortunate that Odham's efforts in his principal's behalf must go unrewarded since it appears he did a splendid job of enhancing the desirability of the land and achieving its best use. But his misdirected efforts to protect his commission went beyond the bounds of propriety when he insisted that, if the terms desired by him were not inserted in the purchase agreement, there should be no negotiated purchase but an acquisition by condemnation. A broker has no superior right to insist upon terms to be inserted in a contract between seller and buyer. The listing agreement even provides that, while the broker was receiving an exclusive listing agreement, the terms of sale had to be acceptable to the seller. Odham also lost sight of the rather obvious fact that, absent his signature on the purchase agreement, that document could not change the terms of his agreement with Wallace. Odham's proper course of action was simple: allow the transaction to close without attempting to thwart the sale, thereby entitling him to a commission in accordance with the requirement of his listing agreement that a sale take place. If the amount of the commission is unacceptable or inaccurate under the broker's interpretation of *176 the listing agreement, the court system is still available to resolve the differences.
The parties submitted the issues of abandonment and breach of the fiduciary relationship to the jury without objection, and the jury found in Wallace's favor. The record before us reflects evidence to support the jury's verdict. A motion for judgment notwithstanding the verdict should be resolved with caution since granting the motion holds that one side of the case is without probative evidence. United Farm Agency v. DKLS, Inc., supra. Trial courts may grant motions for judgments notwithstanding the verdict only when there is no evidence or inferences which may support the opposing party's position. Id.
The trial court's alternative order to allow a new trial on the ground that the verdict was contrary to the manifest weight of evidence was also error. "Manifest" means clear, plain, or indisputable. Grand Assembly of Lily White Security Benefit Ass'n v. New Amsterdam Casualty Co., 102 So.2d 842 (Fla. 2d DCA 1958). The evidence in the instant case was not clearly, plainly, and indisputably in Odham's favor; therefore, there was no reasonable basis upon which the court could have exercised its discretion to grant a new trial.
We reverse the trial court's judgment notwithstanding the verdict, its alternative grant of new trial, and remand for entry of judgment in accordance with the jury's verdict.
REVERSED and REMANDED.
DAUKSCH and COBB, JJ., concur.